Walter L. FLETCHER, Jr., Plaintiff,

v.

Anthony J. O'DONNELL and City of Allentown, Defendants.

Civ. A. No. 87–2115.

United States District Court, E.D. Pennsylvania.

Jan. 18, 1990.

Richard J. Orloski, Orloski & Hinga, Allentown, Pa., for plaintiff.

Thomas A. Wallitsch, Weaver, Mosebach, Piosa, Hixson, Wallitsch & Marles, Allentown, Pa., for defendants.

## MEMORANDUM

CAHN, District Judge.

The plaintiff, Walter L. Fletcher, Jr., has filed an application for attorney's fees and costs. Fletcher sued Officer Anthony O'Donnell and the City of Allentown under 42 U.S.C. § 1983, claiming violations of his civil rights due to the allegedly excessive force used by Officer O'Donnell in his arrest and the absence of probable cause for that arrest. The case was tried before a jury. This court granted a directed verdict in favor of the City of Allentown. The case against O'Donnell went to the jury, which found that Officer O'Donnell used excessive force but that there was probable cause for the arrest. The jury at first awarded no compensatory damages and $1,500 in punitive damages; after it was told that this verdict was inconsistent because some compensatory damages would have to result from excessive force, the jury awarded $750 in compensatory damages and $750 in punitive damages.

Fletcher appealed both the damages award against O'Donnell and the directed verdict in favor of the City of Allentown. The Court of Appeals affirmed the O'Donnell verdict but reversed as to the City of Allentown. *Fletcher v. O'Donnell*, 867 F.2d 791 (3d Cir.1989). It held that a new trial would be called for, but that the prior verdict would be res judicata for the level of compensatory damages. Since no punitive damages could be recovered from the City, the sole question on remand would thus be to determine the City's share of the $750 compensatory liability, a claim that, as the Court of Appeals observed, would be mooted if the City paid the $750. 867 F.2d at 795. The City has since done this. Fletcher thereafter petitioned the Court of Appeals for a rehearing, which the Court of Appeals denied. Fletcher's subsequent petition for certiorari was likewise rejected.

—— U.S. ——, 109 S.Ct. 3244, 106 L.Ed.2d 591 (1989). Fletcher now seeks attorney's fees and costs against O'Donnell under 42 U.S.C. § 1988. This court requested additional briefing and held an evidentiary hearing and argument. It now makes its findings.

42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" for actions brought under, *inter alia*, 42 U.S.C. § 1983. The discretion afforded a court is minimal, however; as the Supreme Court has observed, in the context of the 1964 Civil Rights Act, a successful party vindicating protected rights "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (§ 1988; cites *Newman* approvingly); S.Rep. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5912 (legislative history of § 1988; sets forth *Newman* standard). Since no such special circumstances have been asserted here, this court must turn to the task of determining the proper fee. To do so, this court must first determine whether Fletcher was the prevailing party for the purposes of § 1988. If so, the next task is to find the appropriate hourly rates for and time charged by Fletcher's counsel. Using these, this court can decide whether a proper settlement offer was made that, under Fed.R.Civ.P. 68 and *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), would preclude recovery for any fees accruing afterward. Once this "lodestar" fee is determined, this court must decide what, if any, multipliers should be used to adjust it. These steps are set forth below.

## I. PREVAILING PARTY

42 U.S.C. § 1988, cited above, requires that a party have prevailed for it to recover its fees for counsel. The Court has held that, "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit' the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, —— U.S. ——, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). The inquiry must thus focus on whether the suit brought about "a material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." 109 S.Ct. at 1493; *see also Rhodes v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 203, 102 L.Ed.2d 1 (1988) (per curiam) ("[A judgment] will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant towards the plaintiff."). Hence, merely interlocutory rulings that do not afford the relief requested do not transform the party that benefits into the "prevailing party" until or unless that party actually receives some of the relief requested. *Hewitt v. Helms*, 482 U.S. 755, 760–63, 107 S.Ct. 2672, 2675–77, 96 L.Ed.2d 654 (1987); *Hanrahan v. Hampton*, 446 U.S. 754, 758–59, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980). The inquiry is generally not particularly involved; as the Court of Appeals has put it, "[u]sually a common-sense comparison between relief sought and relief obtained will be sufficient to indicate whether a party has prevailed." *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 911 (3d Cir.1985).

Fletcher clearly prevailed in the bulk of the litigation under these standards. Since he won a verdict against O'Donnell at trial, he certainly prevailed there. The work done on the initial appeal, the petition for rehearing before the Court of Appeals and the petition for certiorari pose a different problem, however. It is clear that Fletcher did not prevail on the latter two, and his success was equivocal on the first. The prevailing party issue, however, goes to the whole litigation rather than to discrete parts of it. *Institutionalized Juveniles*, 758 F.2d at 919. Consequently, whether these hours should be allowed is better

resolved when the elements of the lodestar are put together. For the litigation as a whole, Fletcher is the prevailing party. The inquiry may thus proceed to the elements of the fee request.

## II. THE LODESTAR

The basic fee award—the "lodestar"—is computed by multiplying the hourly rate by the number of hours worked. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir.1973). These shall be discussed in turn.

### A. Hourly Rate

■ Richard J. Orloski, Fletcher's primary counsel, has requested a rate of $125 per hour for all work performed on this case. He stated in his fee application that this is the current local rate appropriate for an attorney of his skill and experience. This is buttressed by affidavits from James Katz, Esq., Leighton Cohen, Esq., and Richard J. Makoul, Esq., all experienced Lehigh County attorneys, who state that Mr. Orloski is an experienced and able civil rights litigator for whose services $125 per hour is a reasonable rate. Defendants' counsel, Thomas A. Wallitsch, contests these representations. His own affidavit states that he has been an active litigator since 1973 and that his charges to the City of Allentown are $75 per hour for discovery and trial work and $50 per hour for non-court-related work. These rates, he states, are reasonable for Lehigh County. In addition, he has supplied an affidavit from Russell S. McKenzie, Jr., the Risk Manager for the City of Allentown, who states that the City normally pays $75 per hour for discovery and trial work and $50 per hour for other work when it hires counsel for the defense of civil rights actions.

In weighing the contested hourly rates, I am guided by the rule that counsel awarded fees under § 1988 are to be paid "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Ursic v. Bethlehem*

*Mines*, 719 F.2d 670, 676 (3d Cir.1983). Such a rate is to reflect the attorney's skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11; *Pawlak v. Greenawalt*, 713 F.2d 972, 979 (3d Cir.1983). Ordinarily, the attorney's own billing rate for private clients will do so; however, in extreme cases, this rate may be reduced when it is so far above standard community rates for competent counsel that it would be unfair to impose this rate upon the defendant. *Student Pub. Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1445 (3d Cir.1988) ("*SPIRG*"); *Daggett v. Kimmelman*, 811 F.2d 793, 799 (3d Cir.1987).

In light of these precepts, and on reviewing the affidavits and oral presentations, I find that Mr. Orloski is entitled to a rate of $125 per hour for the times covered by this litigation. His affidavits are credible, coming as they do from experienced Lehigh County litigators. Mr. Wallitsch's countering affidavits are also credible, but they address a somewhat different market. Civil rights defense work performed for the City of Allentown carries with it guaranteed pay and a readily-accessible client. No such guarantee exists for counsel representing a civil rights plaintiff. These plaintiffs are often poor, and fees are thus likely to depend upon success in the litigation. Moreover, these cases are often difficult and unpopular to bring, as Mr. Orloski testified. Given the contingent nature of a plaintiff's civil rights suit, it is perfectly reasonable for the hourly rate to exceed that often paid for defense work. In addition, though $125 per hour is on the high side for Lehigh County private counsel of Mr. Orloski's unquestioned experience and ability, it is not excessive. Consequently, I accept Mr. Orloski's petition for a $125 per hour rate for his services.

■ The hearing brought out one point not mentioned hitherto by Mr. Orloski: namely, that some of the work performed in this case was not his own. Rather, it was performed by his associate, Margaret Gilligan Hinga, who has been associated with Mr. Orloski for approximately five years. The uncontradicted testimony at

the hearing established that Ms. Hinga is primarily a drafter and legal researcher for Mr. Orloski. Mr. Orloski was unable to provide the court with Ms. Hinga's normal hourly rate. He stated that he seldom charged on an hourly basis, and that he normally charged at a single rate for all work coming from his office.

This creates significant factual problems. The Supreme Court, in setting out the principles undergirding a court's determination of a reasonable hourly rate, has stated that "the burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community ..." *Blum v. Stenson*, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11 (emphasis added). There is no such direct evidence before the court now, despite the evidentiary hearing and the earlier fee petition. The affidavits supplied speak only to Mr. Orloski's abilities and experience. This court accepts these. But it follows that Ms. Hinga, as Mr. Orloski's junior, is entitled to a lower hourly rate than that awarded to Mr. Orloski.[1]

I have therefore considered Mr. Orloski's request for $125 per hour for himself and for Ms. Hinga and Mr. Wallitsch's riposte of $50–$75 per hour, along with fees awarded recently in this District to attorneys of Ms. Hinga's experience, in determining an appropriate rate for Ms. Hinga's services. *Black Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648, 652 (3d Cir.1986), *vacated on other grounds*, 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987). For example, a recent fee award by Judge Huyett gave $80 per hour to a *partner* at a Lancaster firm. *Continental Assurance Co. v. Lombardo*, No. 86–4867, 1988 WL 94321 (E.D.Pa. Sept. 8, 1988) (1988 U.S.Dist. LEXIS 10086). Similarly, a 1987 award by Judge Huyett gave $60 per hour to a second-year associate in a union-side labor law firm in Philadelphia. *Metro Container Corp. v. Teamsters Local 676*, No. 86–6888, 1987 WL 15825 (E.D.Pa. Aug.

19, 1987) (1987 U.S.Dist. LEXIS 7425). In contrast, an associate in a prominent Philadelphia firm was recently awarded $95 per hour by Judge Newcomer. *J.F. Daley Int'l, Ltd. v. GRP Corp.*, No. 88–4688, 1989 WL 102930 (E.D.Pa. Sept. 6, 1989) (1989 U.S.Dist. LEXIS 10396).

The evidence leads me to conclude that a rate of $70 per hour is reasonable for Ms. Hinga's services over this period. The implied request by Mr. Orloski—$125 per hour—is plainly excessive in light of his own rate and those for similarly experienced counsel. Here Mr. Wallitsch's affidavits are more helpful, as legal research and drafting are tasks commonly delegated to relatively junior attorneys like Ms. Hinga. The rate of $50 per hour advocated by Mr. Wallitsch and routinely paid by the City of Allentown must thus be taken into account. At the same time, the considerations that lead me to grant Mr. Orloski's request for $125 per hour also lead me to raise somewhat the rate of $50 per hour. While Ms. Hinga, as an associate, is buffered somewhat from the financial risk and the personal difficulties that attend civil rights prosecutions, she is not wholly immune to them; if, like virtually all associates, she is an at-will employee, her wages may be lowered or her job lost as a result of financial setbacks suffered by the firm. Moreover, her relative seniority suggests that her rate should be higher than, say, that awarded in 1987 to a first-year associate in a union-side labor firm (a low-paid branch of the legal profession) in Philadelphia (a relatively well-paid market). It should also be lower than that given to a partner in a Lancaster law firm, which competes in a similar legal market. Weighing all of these elements, I find $70 per hour a reasonable rate in light of Ms. Hinga's experience, the quality of her work as shown by the pleadings and briefs submitted to this court by Mr. Orloski, and the contingent nature of her work, all taken in the context of the Lehigh County market.

---

1. It could be argued that the affidavits supplied by Mr. Orloski in fact speak to the collective skill and experience of his firm, and that the rate given as reasonable is thus an average rate for his firm's services. This argument is not implausible, but it is not supported by the language of the affidavits. The affidavits refer to Mr. Orloski's experience, not that of his firm.

### B. Hours

The general requirement, as suggested by the statute, is that hours may be charged to the defendant if they were "reasonably expended" on the litigation. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939; *Ursic,* 719 F.2d at 676. The plaintiff must provide the court with adequate documentation for the hours requested. *Northeast Women's Center v. McMonagle,* 889 F.2d 466, 475 (3d Cir.1989); *Pawlak,* 713 F.2d at 978. That done, the court may reduce hours only if the defendant challenges them or if the hours expended are within his personal knowledge. *Bell v. United Princeton Properties,* 884 F.2d 713, 719 (3d Cir.1989); *Cunningham v. City of McKeesport,* 807 F.2d 49, 52 (3d Cir.1986). The defendant may raise objections in a brief or an answer; to the extent that the objections implicate issues of fact, however, the objections must be supported by affidavits. *Bell,* 884 F.2d at 720.

Before this court can examine particular objections to various claims, it must address a serious problem with documentation. In the initial fee petition, Mr. Orloski presented an itemized list of claimed hours. At the evidentiary hearing, when asked for the timesheets that supported the list, he replied that no such records existed for his own work.[2] Instead, he relied upon his correspondence file and his calendar as records of what he did on this case, reconstructing the number of hours performed from memory and from his usual means of operation.

As the Supreme Court has observed, "The party seeking an award of fees should submit evidence supporting the hours worked ... Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. This harsh result is necessary for several reasons. First, the courts have often repeated the need for counsel to exercise good billing judgment in their fee requests. *See, e.g., Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939; *In re Fine Paper Litigation,* 751 F.2d 562, 594–95 (3d Cir.1984);

*Proffitt v. Municipal Auth.,* 716 F.Supp. 845, 849 (E.D.Pa.1989). Without good contemporaneous records, it is difficult to establish with any accuracy whether counsel, in preparing a fee petition, chose not to bill for certain fruitless hours for which a commercial client would not be billed. This deprives the court of much of the context it requires in considering billing judgment, and it adds to the burdens of the non-moving party. Second, retrospective estimates necessarily produce inaccuracy in the number of hours claimed. While manifest unreasonableness is easy to detect and challenge, slight but consistent overstatement is not. Third, even with the *aides-mémoire* in the correspondence file, some of the requested hours may be misclassified. Should a particular type of fee claim be denied, misclassification could yield an erroneous fee.

Accordingly, following the Supreme Court's lead, many lower courts have lowered the requested hours, often greatly, because of inadequate documentation. *See, e.g., Ackerman v. Western Elec. Co.,* 860 F.2d 1514, 1520 (9th Cir.1988); *Yohay v. City of Alexandria Employees Credit Union,* 827 F.2d 967, 974 (4th Cir.1987); *Kennecott Corp. v. EPA,* 804 F.2d 763, 767 (D.C.Cir.1986); *Grendel's Den v. Larkin,* 749 F.2d 945, 951–52 (1st Cir.1984); *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). Indeed, some courts of appeal have held that counsel *must* keep contemporaneous time records if they desire fees under fee-shifting statutes or common fund allotments later. *Grendel's Den,* 749 F.2d at 952; *New York Ass'n,* 711 F.2d at 1148; *National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1324 (D.C.Cir.1982); *see also Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1094–95 (5th Cir.1982) ("While this circuit has not adopted such a rule, prudent counsel will adhere to that procedure."), *modified in part on other grounds,* 701 F.2d 542 (5th Cir.1983) (en banc).

Our Court of Appeals has been all but silent on this issue, though it has held that

---

**2.** Ms. Hinga kept timesheets, which Mr. Orloski    used in calculating her hours.

reconstructed time records may be enough to support a fee request. *Pawlak*, 713 F.2d at 978. Here, the contemporaneous records are woefully lacking, but the reconstruction is at least sufficiently detailed to permit the defendant to attack specific items. Furthermore, since this district's judges have not generally reduced hours because of inadequate documentation, I am somewhat reluctant to do so here. *But see Drake v. Perrin*, 593 F.Supp. 1176 (E.D.Pa. 1984) (Lord, J.) (where time logs lumped compensable and non-compensable hours, *all* hours disallowed). Counsel should henceforth be on notice, however, that any future deficiencies in recordkeeping will be grounds for a significant fee reduction.

Mr. Orloski has requested fees for a total of 101 hours.[3] For analytical ease, these may be split according to the phases of the proceedings. Thus, Mr. Orloski and Ms. Hinga expended 8.0 hours on the criminal trial underlying this case, 59.5 hours on the trial itself, including pretrial preparations and post-trial motions, 13.25 hours on the primary proceedings before the Court of Appeals, 0.25 hours on the petition for rehearing, 8.75 hours on the petition for a writ of certiorari, and 11.75 hours on the fee petition. The hours spent on the fee petition will be discussed separately; all other hours will be discussed in turn.

### 1. The Criminal Trial

■ Mr. Wallitsch challenged Mr. Orloski's fee request for these hours in his brief and in the hearing, arguing that the criminal trial was unrelated to the civil rights case at issue here and thus that the defendant should not have to pay for Fletcher's criminal defense. Mr. Orloski argues that, since the civil rights action arose from the criminal charge, it was necessary for him to participate in the criminal proceeding, very much as though it was a deposition. Both arguments have substantial merit; given the law on the subject, a Solomonic decision is appropriate.

Though there appears to be no precedent in this circuit, other courts have split over whether such fees are recoverable. *Compare Greer v. Holt*, 718 F.2d 206 (6th Cir. 1983) (fees not recoverable); *Venuti v. Riordan*, 702 F.2d 6 (1st Cir.1983) (same); *and McKever v. Vondollen*, 681 F.Supp. 999 (N.D.N.Y.1988) *with Borunda v. Richmond*, 885 F.2d 1384 (9th Cir.1988) (fees recoverable); *Kerr v. City of Chicago*, 424 F.2d 1134 (7th Cir.1970) (same); *and Lykken v. Vavreck*, 366 F.Supp. 585 (D.Minn. 1973) (same). The civil rights actions in *Borunda*, *Kerr*, and *Lykken*, however, sought attorney's fees as elements of § *1983* claims. As such, the costs of defending against an unlawful charge can legitimately be included in the damages suffered by the plaintiff, "where the expenditure is a foreseeable result of the acts of the defendant." *Kerr*, 424 F.2d at 1134; *see also Borunda*, 885 F.2d at 1389–90.

In contrast, the claims here are for fees under § *1988*. This provision permits fees only for actions brought to enforce the federal civil rights statutes. Even the *Borunda* court, which granted recovery under § 1983, observed that recovery would be inappropriate under § 1988. *Borunda*, 885 F.2d at 1389 n. 4. The *Greer*, *Venuti*, and *McKever* courts all dealt with § 1988 actions, and all denied fees for the criminal action. Since Fletcher's criminal defense was not an action within the scope of § 1988, I find that the hours devoted to it are not compensable as such.

However, Mr. Orloski is correct when he asserts that he would have had to review the criminal transcript if he had not tried the case himself. The proceedings were not wholly unrelated, and testimony in the criminal case might have proven useful to impeach witnesses at the civil trial or otherwise to prepare. Since Mr. Orloski could properly have billed time for reviewing a trial transcript, it is reasonable to allow a portion of the time spent at trial to be billed here. *See Perkins v. Cross*, 728 F.2d 1099, 1100 (8th Cir.1984) (per curiam)

---

**3.** Actually, Mr. Orloski has asked for fees for 101.25 hours in the initial fee petition and 8.25 hours in the supplemental fee petition. His itemized list of hours expended in the initial petition, however, totals only 92.75 hours. This, added to 8.25 hours, yields the corrected figure of 101 hours used above.

(§ 1988; fees in earlier criminal case recoverable where research or investigation done for it proved directly relevant in civil rights action). On reviewing the reconstructed time summary, I find that the preliminary hearing and the trial account for four billed hours. Since review of a transcript is quicker than conducting the proceeding, I shall allow 2.5 hours as the time reasonably allotted for Mr. Orloski's exposure to materials germane to the civil rights action.

### 2. Civil Rights Trial

Mr. Orloski claims 59.5 hours for all proceedings, including pre-trial and post-trial activity, connected with the civil rights action. Mr. Wallitsch has not challenged this part of the fee request. While I may, for good cause, adjust the requested times for hours within my knowledge, I find that Mr. Orloski's requests for time spent before me are reasonable. *Bell,* 884 F.2d at 719. Consequently, I grant the 59.5 hours requested. Of these, Mr. Orloski stated in the hearing that the complaint and the interrogatories were drafted by Ms. Hinga. I therefore assign the 4.75 hours spent on those to her. All other hours are assigned to Mr. Orloski.

### 3. Court of Appeals

██ The request here is for 13.25 hours spent on the primary appeal and 0.25 hours on the motion for rehearing. Though the number of hours has gone unchallenged, the hours themselves have been. The question is whether Fletcher succeeded within the scope of *Hensley.* As the Court held there, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. Ordinarily, a plaintiff may recover fully even when she does not prevail on all issues, as long as she attains the desired result. *Hensley,* 461 U.S. at 435–

36, 103 S.Ct. at 1940–41; *Blum v. Witco Chem.,* 829 F.2d 367, 378–79 (3d Cir.1987) ("*Blum I*"); *Black Grievance Comm.,* 802 F.2d at 654. The courts have been disinclined to parse out hours spent on unsuccessful claims where such claims and their more successful counterparts rest upon a common core of facts or on related legal theories. *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940; *Blum I,* 829 F.2d at 378; *Hughes v. Repko,* 578 F.2d 483, 487 (3d Cir.1978); *Costello v. Daddario,* 710 F.Supp. 1035, 1040 (E.D.Pa.1989). However, they have repeatedly lowered fee requests for partially successful claimants. *See, e.g., Durett v. Cohen,* 790 F.2d 360, 363 (3d Cir.1986); *Proffitt,* 716 F.Supp. at 850. Moreover, hours may be eliminated entirely when they were spent on unsuccessful claims and when the hours were entirely separable from hours spent on successful aspects of the litigation. *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943; *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990); *Institutionalized Juveniles,* 758 F.2d at 919.

The Court of Appeals did not alter the net award, so Fletcher gained nothing in that sense. However, as Fletcher's counsel argued at the fee hearing, the reversal of the directed verdict for the City was more than merely an empty procedural victory of the sort covered by *Hewitt.* By reopening the case against the City, Fletcher was able to use the threat of continued litigation as a means of encouraging the City to carry out its promise to pay the compensatory award against O'Donnell.[4] A victory need not occur in court for it to be covered by 42 U.S.C. § 1988, as long as it came about as a result of litigation. *Hewitt,* 482 U.S. at 760–61, 107 S.Ct. at 2675–76; *Maher v. Gagne,* 448 U.S. 122, 129–30, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980). The initial proceedings before the Court of Appeals are thus compensable. In the hearing, Mr. Orloski stated that the Court of

**4.** Moreover, attorneys' fees and costs may not be recovered against a governmental entity when a governmental employee, sued in his personal capacity, is the losing party. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Court of Appeals' hold-

ing thus opened up the opportunity for the City to be held responsible for fees and costs, which would be highly desirable for Fletcher in light of the relative depth of the City's pockets and O'Donnell's.

Appeals brief was written by his associate; the five hours allotted to that are thus chargeable at Ms. Hinga's rates. The remaining 8.25 hours are attributable to Mr. Orloski.

■ However, the petition for rehearing was denied. There is no difficulty whatever about dissecting out the hours spent on it, and its lack of success is manifest. Since success is a necessary prerequisite for recovery, and since these hours are separable, I shall deny the 0.25 hours spent on the petition for rehearing. *See Institutionalized Juveniles*, 758 F.2d at 915–16, 919–20 (lack of success in appellate proceedings warrants denying fee).

4. Supreme Court

■ The 8.75 hours spent on the unsuccessful writ for certiorari are subject to the same standards as the appellate proceedings. The denial of certiorari, coupled with the separability of the hours, provide strong support for the defendant's request that these hours be disallowed. I shall disallow them. *See Toussaint v. McCarthy*, 826 F.2d 901, 904 n. 3 (9th Cir.1987) (time spent on unsuccessful petition for certiorari disallowed).

C. Summary

Thus, of the 89.25 hours requested (excluding the fee petition), I shall grant 72.9 hours and deny 16.35 hours. Of these, 9.75 were logged by Ms. Hinga and 63.15 by Mr. Orloski. At the rates of $125 per hour for Mr. Orloski and $70 per hour for Ms. Hinga, the lodestar award is thus $8,875.00.

### III. SETTLEMENT OFFERS

Under Federal Rule of Civil Procedure 68, a settlement offer made more than ten days before trial that exceeds the final judgment bars the offeree from recovering any costs incurred afterward from the offeror. The term "costs" in the Rule includes attorney's fees under § 1988. *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985); *Lawrence v. City of Philadelphia*, 700 F.Supp. 832, 836 (E.D. Pa.1988). The offer must thus exceed the

sum of the damages award and the fees and costs assessed; if it does, it precludes the recovery of both fees and costs. *O'Brien v. City of Greers Ferry*, 873 F.2d 1115, 1118 (8th Cir.1989); *Grosvenor v. Brienen*, 801 F.2d 944, 946–48 (7th Cir. 1986). Such an offer must be properly served in accordance with Rule 5; thus, it may not be oral, even if it is made at a settlement conference. *Grosvenor*, 801 F.2d at 948–49; 7 J. Moore, J. Lucas, & K. Sinclair, *Moore's Federal Practice* ¶ 68.04 (2d ed. 1989).

Under these principles, the settlement offers made do not bar fees. Even after an order of this court directing the parties to provide full information on settlement offers, the only written offers for which evidence was supplied were made *after* the trial. These fall outside the scope of Rule 68. Earlier offers were oral and thus not preclusive. Consequently, the fee survives this challenge.

### IV. MULTIPLIERS

Both the plaintiff and the defendant argue that the lodestar should be adjusted. The plaintiff argues that the superior quality of his representation, the scarcity of counsel willing to prosecute civil rights cases, the contingency risks, and the delay in payment warrant a positive multiplier of fifty percent. The defendant demurs, arguing instead that the limited success of this litigation justifies a negative multiplier.

■ Before I address these contentions, I must briefly consider the defendant's argument that the fee should be lowered because it is several times higher than the award. As the defendant conceded in the hearing, proportionality arguments have been foreclosed by *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). The plurality in *Rivera* rejected this argument; since civil rights suits "[seek] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," the benefit derived is not directly related to the damages recovered. *Rivera*, 477 U.S. at

574, 106 S.Ct. at 2694. Such a rule would also discourage suits that sought primarily injunctive relief, a result that would frustrate the purpose of the statute.

To be sure, Justice Powell's concurrence—the necessary fifth vote—states that "[i]t will probably be the rare case in which an award of *private* damages can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." *Rivera,* 477 U.S. at 586 n. 3, 106 S.Ct. at 2700 n. 3 (Powell, J., concurring) (emphasis in original). This suggests that a court reviewing a fee request for a suit like this, in which the direct relief flows entirely to the plaintiff, must investigate to what extent the benefit to the public interest makes a disproportionate fee reasonable. I need not do this, though, because the Court of Appeals has interpreted *Rivera* to bar negative multipliers based on disproportionality. *Cunningham,* 807 F.2d at 53–54 (§ 1988); *see also Northeast Women's Center,* 889 F.2d at 471–74 (RICO). Consequently, I shall deny the defendant's request for a reduction in fees due to disproportionality.

**A. Positive Quality Multiplier/Negative Success Multiplier**

■ The plaintiff's request for a quality multiplier and the defendant's request for a negative result-based multiplier may effectively be paired. Quality multipliers are frowned upon by the courts. As the Court observed in *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ("*Delaware Valley I*"), "the overall quality of performance ordinarily should not be used to adjust the lodestar." *Delaware Valley I,* 478 U.S. at 566, 106 S.Ct. at 2690; *see also Blum v. Stenson,* 465 U.S. at 898–901, 104 S.Ct. at 1548–50 (lodestar adjustments should be rare). This is so because an attorney's skill is normally reflected in her billing rate, which serves as the starting point for that element of the lodestar. A fee applicant thus needs to show that her services were so extraordinarily superior to those normally provided by attorneys charging her fees that her standard hourly rate would not be a reasonable fee. *SPIRG,* 842 F.2d at 1453. This applicant has not done so. Mr. Orloski is a competent attorney who secured a modest award for his client. As I held earlier, his hourly rate, though somewhat high, is justifiable in part because he is a competent civil rights attorney. I find that this already augmented rate adequately compensates Mr. Orloski for his skills, and that the results in this case are well within the reasonable expectations of a client. This applies to Ms. Hinga as well; her identifiable work is competent, but no more so than one would expect from an attorney with her experience who charged $70 per hour in this market. Again, the figure is somewhat high; again, it reflects in part her skills in this field. I therefore deny the applicants a quality multiplier.

For similar reasons, I deny the defendant's request for a negative multiplier of the sort recognized in *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941. *See also Black Grievance Comm.,* 802 F.2d at 654; *Durett,* 790 F.2d at 363. The plaintiff did not receive a large award, but the amount of the award was not unreasonable for the injuries complained of. Furthermore, though the plaintiff did not prevail on all claims at trial, the Court of Appeals reopened the claims against the City of Allentown that had been barred earlier. It is thus impossible to point to any type of relief that the plaintiff sought but lost on conclusively.

To the extent that the defendant's argument rests upon the restricted scope of the success, it is also not well taken. The fact that a constitutional right is singular does not make it less meritorious than one that is inherently plural. *Cunningham,* 807 F.2d at 54. Though Fletcher may have sought damages for injuries only he sustained, the principle under which he obtained them—that police officers should not use excessive force in making arrests—is important both to Fletcher and to all those who are arrested. A verdict of this sort, by putting police departments and individual officers on notice, thus redounds to the benefit of all. I shall therefore deny

the defendant's request for a negative multiplier.

## B. Scarcity

██ The applicant also requests that the fee be enhanced because there are few counsel willing to take such cases on and, correlatively, that these cases are burdensome and yield business losses and general calumny for those who attempt them. Here, too, I find that no additional allowance is needed. As part of my earlier rate-setting, I found that the rates for Mr. Orloski and Ms. Hinga, though perhaps higher than the rates that would be appropriate for civil rights *defense* counsel, were reasonable given the problems that attend those who bring such cases. To give more would count this factor twice. I therefore deny this request.

## C. Contingency

██ Fletcher asks for a contingency multiplier. This, if given, would compensate his counsel for the risk of defeat. The logic here is that a fee system that gives a normal commercial fee in successful cases, but no fee in unsuccessful cases, undercompensates attorneys for the risk of loss where an ordinary contingent rate is inappropriate. Thus, for example, the Court recently held that a contingent fee agreement could not serve as a cap on § 1988 attorney's fees. *Blanchard v. Bergeron,* —— U.S. ——, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989). However, the arguments against contingency multipliers are many. These have been rehearsed in the leading case on contingency multipliers, *Pennsylvania v. Delaware Valley Citizen's Council,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("*Delaware Valley II*"). To determine a risk multiplier for each case would require that a higher multiplier be paid for a weak case than a strong one, which could create perverse incentives. The spectacle of a plaintiff minimizing the strength of his case and a defendant magnifying the likelihood of his loss is also unedifying. *Delaware Valley II,* 483 U.S. at 721–23, 725–27, 107 S.Ct. at 3084–85, 3086–87.

*Delaware Valley II* showed a 4–1–4 split on the circumstances, if any, under which a contingency multiplier would be appropriate. The Court of Appeals, construing in particular Justice O'Connor's partial concurrence, has interpreted this case to mean that contingency multipliers are available only where the risk enhancement would be necessary to attract competent counsel; to determine this, it would be necessary to look at the market of contingent fee cases to see whether the market does not adequately compensate for risk. *Delaware Valley II,* 483 U.S. at 732–34, 107 S.Ct. at 3090–91 (O'Connor, J., concurring); *Blum v. Witco Chem.,* 888 F.2d 975, 981 (3d Cir.1989) ("*Blum II*").

The applicant thus must make substantial showings of fact, particularly concerning the local contingent fee market. Such showings could include an econometric study, setting up a mathematical model of how hourly rates relate to contingency compensation. *Blum I,* 829 F.2d at 380–81. A cheaper alternative might be a thorough market-basket survey of local fee arrangements, which could address both whether hourly rates compensate adequately for risk and whether the absence of a multiplier would make counsel unduly scarce. *Rode,* 892 F.2d at 1184–85; *Blum II,* 888 F.2d at 981, 983; *Blum I,* 829 F.2d at 381. Neither was provided here. Without a proper factual predicate, this court cannot award a contingency multiplier. I therefore shall not do so.

## D. Delay

██ Finally, Fletcher asks for a multiplier because of the delay of over two years from the filing of the complaint to now. Because a standard commercial fee would normally be paid over time, the lumped payment here means that Fletcher's counsel, to be made whole, should be compensated for interest, inflation, and opportunity costs. *Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *SPIRG,* 842 F.2d at 1453.

Such a multiplier is inappropriate because the applicant has made no factual showing about any detriment suffered by

counsel because of the delay. At a minimum, this court needs to have evidence of the rate of market interest and the time value of money over the period of the litigation if it is to calculate the effect of delay. *Institutionalized Juveniles*, 758 F.2d at 923. The Court of Appeals has held that, without such a showing, there may be no delay multiplier. *SPIRG*, 842 F.2d at 1453–54; *Institutionalized Juveniles*, 758 F.2d at 923–24. I find that there is no basis in fact for a delay multiplier and therefore deny Fletcher's request for one. Since I have granted none of the requested multipliers, whether positive or negative, the lodestar fee of $10,045.00 will be the fee award in this case.

## V. FEE PETITION

■ Time spent on the fee petition is to be analyzed separately from that spent on the main part of the litigation. *Hensley*, 461 U.S. at 424, 103 S.Ct. at 1933; *SPIRG*, 842 F.2d at 1455. This request is for 11.75 hours. Hours spent on the fee petition are compensable. *See, e.g., SPIRG*, 842 F.2d at 1455; *Black Grievance Comm.*, 802 F.2d at 656. However, these hours may be reduced, following *Hensley*, when the petition is only partially successful; in fact, it has been held an abuse of discretion *not* to do so. *Black Grievance Comm.*, 802 F.2d at 657; *see also SPIRG*, 842 F.2d at 1455 (reduction because of partial success); *Durett*, 790 F.2d at 360 (same). Although many elements of the fee request are granted here, it is also true that many are not. Indeed, just under half of the amount requested has been allowed. It would be falsely precise to reduce the request for time spent on the fee petition by the amount of the request not granted, though. Much of the time spent here would have been spent on any fee petition, and so the incremental time spent on unsuccessful claims is lower than the dollar value they represent. I therefore find, on the basis of my review of the petition and all supplemental pleadings, that a negative multiplier of 20% is appropriate in light of the partial

success. I shall thus grant 9.4 hours for work on the fee petition; on the basis of the statements made at the hearing by Mr. Orloski, I shall credit him with these hours.[5] At Mr. Orloski's established rate of $125 per hour, the recoverable fee is $1,175.00. Thus, the net fee for this litigation is $10,045.00.

## VI. COSTS

In the evidentiary hearing, Mr. Orloski submitted an unsworn document itemizing the costs incurred in this action. While this is unsatisfactory as a basis for an award of costs, the plaintiff may file with the Clerk of Court an appropriate bill of costs pursuant to 28 U.S.C. §§ 1920 & 1924 and Fed.R.Civ.P. 54(d).

## VII. CONCLUSION

I grant in part the plaintiff's application for fees in the amount of $10,045.00. In particular, I hold that Mr. Orloski is entitled to the rate of $125 per hour that he requested, but that his associate, Ms. Hinga, should receive $70 per hour for her services. These rates take into account the skill and experience of counsel, the standard rates in the relevant market, and the difficulties peculiar to plaintiffs' civil rights cases. I have allowed all itemized hours save those for manifestly unsuccessful work that was easily parsed out from all other work (the hours spent on the motion before the Court of Appeals to rehear and on the petition for certiorari), those spent on unrelated legal proceedings (the criminal trial), and some of those spent on partially successful claims (the fee petition). Some hours were allowed for the criminal trial, where these would reasonably have been spent on review of the transcript. Finally, the multipliers requested were all denied as legally improper, factually unestablished, or already accounted for in the lodestar rate. I find that the resulting fee reasonably compensates counsel for the work performed.

---

**5.** Though this is the sort of work that his associate performed, he did not mention the fee petition as one of his associate's contributions.

One final note. The order charges these fees to O'Donnell only. Though the City of Allentown was a codefendant, no verdict was ever entered against it. Therefore, it cannot be held liable for fees; it was never prevailed against at trial. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Durett,* 790 F.2d at 364 & n. 4. Of course, this does not prevent indemnification, such as that which occurred with the damages in this case.

An order follows.

### ORDER

AND NOW, upon consideration of the Plaintiff's Application for Allowance of Attorney's Fees and the responses thereto, IT IS ORDERED that the Application is GRANTED IN PART. Defendant O'Donnell is ordered to pay to Plaintiff's counsel the amount of Ten Thousand Forty–Five Dollars ($10,045.00) plus costs.