Charles T. CERVA

v.

**E.B.R. ENTERPRISES, INC., d/b/a Atrex Transmissions Experts, Inc., Anthony O'Donnell, and the City of Allentown.**

Civ. A. No. CA 86–6949.

United States District Court,
E.D. Pennsylvania.

May 17, 1990.

---

Richard J. Orloski, Allentown, Pa., for plaintiff.

Thomas Wallitsch, Allentown, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Charles T. Cerva has filed an

application for allowance of attorney fees.[1] Plaintiff requests this court to enter an order allowing attorney fees from defendant Anthony O'Donnell, pursuant to 42 U.S.C. § 1988, in the amount of $32,812.50.

## I. BACKGROUND

Plaintiff sued Officer Anthony O'Donnell and the City of Allentown under 42 U.S.C. § 1983, claiming violations of his civil rights due to the allegedly excessive force used by Officer O'Donnell when arresting plaintiff and the absence of probable cause for that arrest. Plaintiff also brought a claim under 42 U.S.C. § 1985 contending that defendants O'Donnell and the City of Allentown conspired with defendant Atrex Transmissions Experts, Inc. ("Atrex") to have him arrested without probable cause. Plaintiff also brought a pendent state claim against Atrex for conversion of his automobile.

The case was tried before a jury. At the close of plaintiff's case, this court directed a verdict in favor of the City of Allentown. The case against O'Donnell and Atrex went to the jury. The jury found that O'Donnell arrested plaintiff without probable cause[2] and that O'Donnell did *not* use excessive force in making that arrest.[3] For being arrested without probable cause, the jury awarded plaintiff compensatory damages in the amount of $750.00. With respect to defendant Atrex, the jury found that Atrex did *not* conspire with O'Donnell to arrest plaintiff without probable cause.[4] However, the jury found that Atrex converted plaintiff's automobile.[5]

O'Donnell now seeks attorney fees against O'Donnell under 42 U.S.C. § 1988.

This court requested additional briefing and now makes its findings.

## II. DISCUSSION

■ Section 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" for actions brought under section 1983. However, the discretion afforded a court is minimal. In the context of the 1964 Civil Rights Act, the United States Supreme Court has observed that a successful party vindicating constitutionally protected rights "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newsman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Because no such circumstances are present here, this court must turn to the task of determining the proper fee.

■ In order to recover a fee under section 1988, the threshold issue is whether plaintiff is the prevailing party. The Supreme Court has held that, "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the suit' the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978)). Clearly, plaintiff is the prevailing party because he won a verdict against O'Donnell at trial. Therefore, the inquiry

---

1. In plaintiff's application for allowance of attorney fees, plaintiff does not seek costs and expenses.

2. The jury unanimously answered "yes" to the following interrogatory:

    1. Do you find that defendant Anthony O'Donnell arrested plaintiff Charles Cerva without probable cause?

3. The jury unanimously answered "no" to the following interrogatory:

    3. Do you find that defendant Anthony O'Donnell used excessive force when he arrested plaintiff Charles Cerva?

4. The jury unanimously answered "no" to the following interrogatory:

    2. Do you find that defendant Atrex conspired with defendant Anthony O'Donnell to arrest plaintiff Charles Cerva without probable cause?

5. The jury unanimously answered "yes" to the following interrogatory:

    9. Do you find that defendant Atrex converted the automobile owned by plaintiff Charles Cerva?

may proceed to the elements of the fee request.

## A. LODESTAR

The basic fee award—the "lodestar"—is computed by multiplying the hourly rate by the number of hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 443, 103 S.Ct. 1933, 1944, 76 L.Ed.2d 40 (1983); *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir.1973).

### 1. *Hourly Rate*

■ Richard J. Orloski, plaintiff's attorney, has requested a rate of $125 per hour for all work performed on this case. He stated in his fee application that this is the current local rate appropriate for an attorney with his skill and experience in Lehigh County, Pennsylvania. He buttresses this statement with affidavits of other experienced Lehigh County attorneys who state that "an hourly fee of $125.00 is fair and reasonable for handling litigation." *See* Plaintiff's Supplemental Application for Allowance of Attorney Fees, Exhibits A, B, & C.

Defendant's attorney, Thomas A. Wallitsch, contests these representations. Mr. Wallitsch's affidavit states that he has been an active litigator since 1973 and that his charges to the City of Allentown are $75 per hour for discovery and trial work and $50 per hour for non-court related work. These rates, Mr. Wallitsch states, are reasonable. In further support of that contention, Mr. Wallitsch supplied the affidavit of Russell S. McKenzie, Jr., the Risk Manager for the City of Allentown, who states that the city normally pays $75 per hour for discovery and trial work and $50 for non-court related work.

In *Fletcher v. O'Donnell*, 729 F.Supp. 422 (E.D.Pa.1990), a civil rights case factually similar to the present case which included the same plaintiff's attorney, the same defendant's attorney and the same defendant, Judge Cahn concluded that Mr. Orloski was entitled to a rate of $125 per hour. *Id.* at 426. In *Fletcher*, Judge Cahn stated:

> Civil rights defense work performed for the City of Allentown carries with it guaranteed pay and a readily-accessible client. No such guarantee exists for counsel representing a civil rights plaintiff. These plaintiffs are often poor, and fees are thus likely to depend upon success in the litigation. Moreover, these cases are often difficult and unpopular to bring, as Mr. Orloski testified. Given the contingent nature of a plaintiff's civil rights suit, it is perfectly reasonable for the hourly rate to exceed that often paid for defense work.

*Id.*

I conclude, as did Judge Cahn, that the rate of $125 per hour is reasonable. As Judge Cahn observed, Mr. Wallitsch's countering affidavits, although credible, address a market different from Orloski's.

### 2. *Hours*

■ The general requirement, as suggested by the statute, is that hours may be charged to the defendant if they were "reasonably expended" on the litigation. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Plaintiff has the burden of providing the court with adequate documentation for the hours requested. *Northeast Women's Center v. McMonagle*, 889 F.2d 466, 475 (3d Cir.1989). A judge may not *sua sponte* reduce a request for attorney fees. *Bell v. United Princeton Properties*, 884 F.2d 713, 719 (3d Cir.1989). A judge, however, may reduce the number of hours requested if defendant challenges them or if the hours expended are within the judge's personal knowledge.

Mr. Orloski has requested fees for a total of 179 hours [6]—171¾ hours were spent litigating and 7¼ hours were spent preparing

---

**6.** Mr. Orloski requested fees for 175 hours in his initial application for attorney fees. Pursuant to an order dated February 23, 1990, this court requested plaintiff to file a supplemental memorandum addressing his request for a delay multiplier. Mr. Orloski requested another 4 hours for time spent researching and preparing this supplemental memorandum in support of plaintiff's application for allowance of attorney fees.

the fee applications. Of the hours spent litigating, defendant contends that 2¼ of those hours should not be taken into account because they relate to plaintiff's criminal action and 10¼ of those hours should *not* be taken into account because they are hours that relate solely to defendant Atrex.

### a. Criminal Action

■ Defendant objects to any time that plaintiff's attorney spent defending plaintiff against a criminal charge which was brought against him as a result of the incidents which form the basis of the present civil rights action. In particular, defendant contends that 2¼ hours should be deducted from the number of hours requested.[7]

In resolving this dispute, I look to Judge Cahn's well-reasoned opinion in *Fletcher*. In that case, Judge Cahn recognized that Fletcher's criminal defense was not an action within the scope of section 1988 and, therefore, that hours spent on the criminal action are not compensable as such under section 1988. However, Judge Cahn also recognized that Mr. Orloski would have had to review the trial transcript if he had not tried the case himself because the proceedings were *related* and *testimony in the* criminal case might have been useful in preparing for the civil case. Therefore, Judge Cahn concluded that since Mr. Orloski "could properly have billed time for reviewing a trial transcript, it is reasonable to allow a portion of the time spent at trial to be billed here." *Id.* at 16. Based upon a total of 4 billable hours for the preliminary hearing and the trial, Judge Cahn permitted Orloski to recover only 2½ hours because reviewing a trial transcript is quicker than conducting the proceeding itself.

In the present case, Mr. Orloski claims a total of 2¼ hours with respect to the criminal charge against plaintiff. Two of those hours were spent at a preliminary hearing on September 8, 1986 and the other ¼ hour was spent filing a notice of appeal of plaintiff's criminal conviction on September 16,

1986. Adopting the reasoning applied by Judge Cahn, I shall permit Mr. Orloski to recover the 2 hours which he spent at the preliminary hearing as time reasonably allotted to exposure to facts relevant to plaintiff's civil rights action, which arose from the criminal charge against plaintiff. Further, I shall reduce Mr. Orloski's requested hours by the ¼ hour that he spent filing the notice of appeal of plaintiff's criminal conviction.

### b. Civil Rights Action

■ Although it is clear that plaintiff is the prevailing party for the purpose of attorney fees under section 1988, this court must decide the number of hours for which plaintiff's attorney should be compensated. Hours spent litigating unsuccessful claims unrelated to the ones on which plaintiff prevailed must be identified and excluded from the lodestar. On the other hand, if the unsuccessful claims are sufficiently interrelated with the successful ones, the court should *not* attempt to identify specific hours spent on those claims and to exclude them from the lodestar. One useful starting point for separating an unrelated, unsuccessful claim from a related unsuccessful claim is to determine whether a particular unsuccessful claim shares a "common core of facts" with the successful claim or is based on a related legal theory. *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. According to *Hensley,* courts should interpret "related claims" broadly. *Id.* at 435, 103 S.Ct. at 1940. Even with this principle of broad construction in mind, time spent on an unsuccessful claim which is distinct in all respects from a successful claim should be excluded in considering the amount of a reasonable fee.

■ With these principles in mind, this court must decide which of plaintiff's unsuccessful claims are related to plaintiff's successful claim for unlawful arrest. I conclude that plaintiff's unsuccessful claim for excessive force is related to plaintiff's claim for unlawful arrest because it involves the same common core of facts and is based on a related legal theory—the

---

**7.** Defendant obtained the 2¼ hour figure from the time that Mr. Orloski spent on September 8, 1986 at the preliminary hearing (2 hours) and

the time that Mr. Orloski spent on September 16, 1986 filing a notice of appeal of plaintiff's criminal conviction (¼ hour).

deprivation by a police officer of a constitutionally protected right. For these same reasons, I also conclude that plaintiff's unsuccessful claim for conspiracy to arrest plaintiff without probable cause is related. With respect to plaintiff's successful claim of conversion of plaintiff's automobile against Atrex, plaintiff cannot obtain attorney fees because that claim is a pendent state claim which was *not* brought to enforce the federal civil rights statute.

The 10¼ hours to which defendant objects are hours spent on matters related only to defendant Atrex and for which plaintiff's attorney fails to specify which claim against Atrex he was addressing, either conspiracy to arrest plaintiff without probable cause or conversion of plaintiff's automobile, he was addressing. Plaintiff did *not* respond to defendant's objection to these 10¼ hours. Consequently, I shall reduce plaintiff's requested hours by 10¼ hours. In particular, those hours and the dates that they were expended are as follows:

| | | |
|---|---|---|
| 12/22/86 | 1½ hours | |
| 01/05/87 | ¼ hour | |
| 01/05/87 | 1½ hours | |
| 01/07/87 | ¼ hour | |
| 02/04/87 | ½ hour | |
| 02/26/87 | 2½ hours | (half of the five hours expended) |
| 03/06/87 | ¼ hour | |
| 03/17/87 | ¼ hour | |
| 03/20/87 | ¼ hour | |
| 03/25/87 | ½ hour | |
| 03/27/87 | ½ hour | |
| 03/30/87 | 1½ hours | (approximately half of the time expended) |
| 03/23/88 | ½ hour | |
| Total Hours: | 10¼ hours | |

#### c. Summary

Of the 179 hours requested by Mr. Orloski, 171¾ hours were spent litigating the present action and 7¼ hours were spent preparing the attorney fee petitions. Time spent on fee petitions is analyzed separately from time spent on the main part of the litigation. *See infra* Section II(C). The hours spent litigating are the hours used to determine the lodestar figure.

Of the 171¾ hours which Mr. Orloski spent litigating, I shall grant him attorney fees for 161¼ hours—a figure arrived at by deducting ¼ hour from the time spent on the criminal action and 10¼ hours from the time spent on the civil action. Therefore, at the rate of $125 per hour, the lodestar award is $20,156.25.

### B. MULTIPLIERS

Plaintiff's counsel also requests a 50% multiplier based upon contingency risk, unavailability of other qualified counsel, excellent results in a lengthy case, and delay in payment. Defendant specifically objects to plaintiff's request for a multiplier based upon excellent results in a lengthy case and contingency risk. Pursuant to an order dated February 23, 1990, this court ordered supplemental briefing on the issue of a delay multiplier. I will discuss seriatim each of these bases for an upward multiplier.

#### 1. *Quality Multiplier*

Orloski requests a multiplier based upon excellent results in a lengthy case. In general, such quality multipliers are frowned upon by the courts. As the Supreme Court observed in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92

L.Ed.2d 439 (1986) (*"Delaware Valley I"*), "the overall quality of performance ordinarily should not be used to adjust the lodestar, thus removing any danger of 'double counting'." *Id.* at 566, 106 S.Ct. at 3099. "This is so because an attorney's skill is normally reflected in her billing rate, which serves as the starting point for that element of the lodestar." *Fletcher*, 729 F.Supp at 432. In order for plaintiff's counsel to obtain a quality multiplier, plaintiff's counsel must demonstrate that his work "far exceeds the expectations of clients and normal levels of competence." *Student Public Interest Research Group of New Jersey v. AT & T Bell Laboratories*, 842 F.2d 1436, 1453 (3d Cir.1988) (*"SPIRG"*).

With respect to this issue, I once again adopt Judge Cahn's reasoning in *Fletcher*, in which he stated:

> Mr. Orloski is a competent attorney who secured a modest award for his client. As I held earlier, his hourly rate, though somewhat high, is justifiable in part because he is a competent civil rights attorney. I find that this already augmented rate adequately compensated Mr. Orloski for his skills, and that the results in this case are well within the reasonable expectations of a client.... I therefore deny the applicant[ ] a quality multiplier.

*Id.* at 432.

### 2. Scarcity Multiplier

Plaintiff's counsel also requests that his fee be enhanced because there are few counsel willing to take civil rights cases. Here, too, I adopt Judge Cahn's reasoning and find that no additional allowance is needed. *See Fletcher*, 729 F.Supp. at 433. In granting Orloski an hourly rate of $125, I have already taken into account the fact that there are few attorneys willing to accept civil rights cases given the problems that attend those who bring such cases. To count this factor again would be counting it twice. Consequently, I deny plaintiff's request for a scarcity multiplier.

### 3. Contingency Multiplier

Plaintiff's counsel also asks for a contingency multiplier to compensate him for the high risk of defeat. The logic behind a contingency multiplier is that a fee system that gives a normal commercial fee in successful cases, but no fee in unsuccessful cases, undercompensates attorneys for the risk of loss.

The Third Circuit Court of Appeals has held that contingency multipliers are available only where the risk enhancement would be necessary to attract competent counsel. *Blum v. Witco Chemical Corp.*, 888 F.2d 975, 981 (3d Cir.1989) (*"Blum II"*) (construing *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*)). To determine whether risk enhancement is necessary to attract competent counsel, the court must look to the difference in market treatment of contingent fee cases as a class, rather than on an assessment of the riskiness of any particular case.

The burden is on plaintiff to justify a contingency multiplier. *See Blum v. Witco Chemical Corp.*, 829 F.2d 367, 380 (3d Cir.1987) (*"Blum I"*). Plaintiff has a heavy burden of making substantial showings of fact, particularly concerning the local contingent fee market. This burden can be met through an economic study setting up how hourly rates relate to contingency compensation or a thorough market-based survey of local fee arrangements. *Id.* at 380–381.

In the present case, plaintiff has failed to provide this court with any evidence to support a contingency multiplier and defendant specifically objects to such a multiplier. Therefore, I cannot award plaintiff's counsel a multiplier based upon contingency.

### 4. Delay Multiplier

Finally, plaintiff's counsel asks for a multiplier because of the delay of over three years from the filing of the complaint. Because a standard commercial fee would normally be paid over time, in order to be made whole, the lump sum payment should take into account interest, inflation, and opportunity costs. *Missouri v. Jen-*

kins by Agyei, —— U.S. ——, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989).

In *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897 (3d Cir.1985), the Third Circuit Court of Appeals explained the policy behind compensating plaintiff's counsel for delay:

> The rationale for allowing the adjustment [for delay], that "payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime," applies regardless of the form of the court's judgment and whether or not the party's success was complete or partial.

*Id.* at 922.

Plaintiff's counsel has the burden of making an adequate showing of the costs incurred by counsel for receiving delayed payment for services rendered. *See, e.g., SPIRG*, 842 F.2d at 1453–54; *Institutionalized Juveniles*, 758 F.2d at 923–24. At a minimum, such a showing should include evidence of the prevailing market rates for interest and the attorney's services over the period of the litigation. *SPIRG*, 842 F.2d at 1453.

Initially, plaintiff's attorney did not present this court with any evidence to support his request for a delay multiplier. Rather than deny the delay multiplier based upon Mr. Orloski's failure to meet his burden of proof, I ordered him to submit a supplemental memorandum addressing the issue of a delay multiplier.

I chose to request this supplemental memorandum in light of the recent Third Circuit Court of Appeals case, *Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir.1990). In *Rode*, the Third Circuit held that "the district court erred in rejecting [plaintiffs'] request for delay compensation because [defendants] failed to object to [plaintiffs'] request." *Id.* at 1188. Therefore, because defendant in the present action did *not* specifically object to plaintiff's request for a delay multiplier, I decided to permit plaintiff's counsel an opportunity to present evidence in support of his request for a delay multiplier, rather than deny his request on the basis that he failed to meet his burden of proof.

Plaintiff has submitted his supplemental memorandum and defendant has responded. Therefore, this issue is ripe to be decided.

In plaintiff's supplemental application for allowance of attorney fees, plaintiff's attorney suggests calculating delay costs using the prime rate as listed in the first edition of the Wall Street Journal for the relevant calendar years. Mr. Orloski's suggestion is based upon Rule 238 of the Pennsylvania Rules of Civil Procedure. Rule 238(a)(3) provides that "[d]amages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published each calendar year for which damages are awarded, plus one percent, not compounded."

According to the Addendum to Explanatory Comment of Rule 238 of the Pennsylvania Rules of Civil Procedure, the prime rate published in the first edition of the Wall Street Journal for each of the relevant years is as follows:

| Date of Publication | Prime Rate |
| --- | --- |
| January 2, 1986 | 9½ % |
| January 2, 1987 | 7½ % |
| January 4, 1988 | 8¾ % |
| January 3, 1989 | 10½ % |

Mr. Orloski further states that, by 1986 when he filed the complaint in the present case, he had already accumulated the expertise and experience in civil rights litigation which entitles him to the hourly rate of $125 per hour. Thus, Mr. Orloski contends that he is entitled to the rate of $125 per hour throughout the present action. In addition, Mr. Orloski requests an additional 4 hours for the time which he spent researching and preparing the supplemental memorandum in support of plaintiff's application for allowance of attorney fees.

In response, defendant offers no substantive objections to the method of calculating delay costs suggested by Mr. Orloski. However, defendant does object as excessive to the 4 hours which Mr. Orloski requested as the preparation time for his supplemental memorandum.

A fee enhancement to compensate for delay in payment is essentially equivalent to an award of interest, *Library of Congress v. Shaw*, 478 U.S. 310, 321–23, 106 S.Ct. 2957, 2965–66, 92 L.Ed.2d 250 (1986), and I conclude that Mr. Orloski is entitled to such a fee enhancement. I further conclude that the method suggested by Mr. Orloski for calculating his delay costs is reasonable. Finally, I conclude that Mr. Orloski is entitled to the rate of $125 per hour throughout the present action. Unlike the plaintiff's attorney in *SPIRG* who graduated from law school the year the *SPIRG* case began and markedly increased his legal experience and skills as that lengthy litigation continued, Mr. Orloski had already attained superior skill and experience before the present action began.

I will consider whether Mr. Orloski is entitled to fees for the 4 hours which he spent preparing his supplemental memorandum pertaining to the delay multiplier along with the other hours which he spent preparing his fee petition.

## C. TIME SPENT ON FEE PETITION

Time spent on the fee petition is to be analyzed separately from the time spent on the main part of the litigation. *Hensley*, 461 U.S. at 424, 103 S.Ct. at 1933; *SPIRG*, 842 F.2d at 1455. Hours spent on the fee petition are compensable. *See, e.g., SPIRG*, 842 F.2d at 1455; *Black Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648, 656 (3d Cir.1986). These hours, however, may be reduced when the petition is only partially successful. In fact, it has been held to be an abuse of discretion not to reduce the hours spent on the fee petition if it is not totally successful. *Black Grievance Comm.*, 802 F.2d at 657; *see also SPIRG*, 842 F.2d at 1455; *Durett v. Cohen*, 790 F.2d 360, 363 (3d Cir.1986).

In the present case, Mr. Orloski is requesting a total of 7¼ hours for time spent preparing his fee petition—3¼ hours for time spent preparing his application for

allowance of attorney fees and supporting memorandum, and 4 hours for time spent preparing his supplemental application for allowance of attorney fees and supporting memorandum. Although many elements of Mr. Orloski's fee application are granted, there are also many elements which are not. Of the four types of multipliers which Mr. Orloski is seeking, I have granted him only the delay multiplier. In *Fletcher*, Judge Cahn stated:

> It would be falsely precise to reduce the request for time spent on the fee petition by the amount of the request not granted, though. Much of the time spent here would have been spent on any fee petition, and so the incremental time spent on unsuccessful [elements] is lower than the dollar value they represent.

*Fletcher*, 729 F.Supp at 434. Therefore, I conclude that a reduction of 1½ hours from the 7¼ hours requested, (approximately a negative multiplier of 20%) is appropriate in light of Mr. Orloski's partial success.[8] *See id.*

## III. CONCLUSION

I grant Mr. Orloski's requested rate of $125 per hour. Of the 171¾ hours requested for time spent litigating the present action, I grant Mr. Orloski fees for 161¼ hours. Of the 7¼ hours requested for time spent preparing the fee petition, I grant Mr. Orloski fees for 5¾ hours. Therefore, the attorney fee award, excluding the delay multiplier, is $20,875.00 (167 hours × $125 per hour).

I also grant Mr. Orloski a delay multiplier calculated using the prime rate published in the first edition of the Wall Street Journal for each of the years in which this action was pending, as set forth in the Addendum to the Explanatory Comment of Rule 238 of the Pennsylvania Rules of Civil Procedure.

On a yearly basis, Mr. Orloski earned fees in the present action as follows:

**8.** For the purpose of calculating the delay costs in Section III, I shall reduce the time spent on the initial fee application by ½ hour to 2¾ hours, and the time spent on the supplemental fee application by 1 hour to 3 hours.

| Year | Time Spent | × | Hourly Rate $125 per hour | = | Attorney Fees Earned |
|---|---|---|---|---|---|
| 1986 | 6.75 | × | $125 | = | $ 843.75 |
| 1987 | 58.75 | × | $125 | = | $ 7343.75 |
| 1988 | 45.50 | × | $125 | = | $ 5687.50 |
| 1989 | 53.00 | × | $125 | = | $ 6625.00 |
| 1990 | 3.00 | × | $125 | = | $ 375.00 |
| Totals: | 167.00 | | | | $20,875.00 |

Therefore, Mr. Orloski's delay costs shall be calculated as follows:

| Year | Attorney Fees | Interest Rate Rule 238 | Interest | × | Years of Delay | = | Delay Costs |
|---|---|---|---|---|---|---|---|
| 1986 | $ 843.75 | 9.50% | $ 80.16 | × | 4 | = | $ 320.64 |
| 1987 | $7343.75 | 7.50% | $550.78 | × | 3 | = | $1652.34 |
| 1988 | $5687.50 | 8.75% | $497.66 | × | 2 | = | $ 995.32 |
| 1989 | $6625.00 | 10.50% | $695.63 | × | 1 | = | $ 695.63 |
| 1990 | $ 375.00 | —— | —— | | – | | —— |
| Totals: | | | | | | | $3663.93 |

Hence, the total of attorney fees plus delay costs is $24,538.93 ($20,875.00 + $3663.93).

An appropriate order follows.