Fred W. PHELPS and Edward
F. Engel, Plaintiffs,

v.

Joan HAMILTON, in her official capacity
as District Attorney, Defendant.

No. 93–4042–SAC.

United States District Court,
D. Kansas.

Feb. 28, 1994.

Elizabeth M. Phelps, Jonathan B. Phelps, Phelps–Chartered, Topeka, KS, for plaintiffs.

Carol R. Bonebrake, Office of Atty. Gen., Topeka, KS, Sharon K. Euler, Office of City Atty., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the plaintiffs' application for attorney's fees. The plaintiffs brought this civil rights action challenging the Kansas criminal defamation statute, K.S.A. 21–4004, as unconstitutionally overbroad on its face and as unconstitutional as applied to them. On July 2, 1993, the court granted the plaintiffs' motion for summary judgment finding that K.S.A. 21–4004 was substantially overbroad and constitution-ally invalid.[1] In light of this ruling, the parties agreed to an order permanently enjoining the defendant from commencing or furthering any criminal prosecution against the plaintiffs under K.S.A. 21–4004 (1970) as amended by 1992 Kan.Sess.Laws, ch. 239, § 187. The court issued that order on August 3, 1993, (Dk. 32), and the defendant appealed on September 2, 1993, (Dk. 34).

On October 4, 1993, the plaintiffs filed their application for an award of attorney's fees stating that the parties could not agree on a reasonable amount of attorney's fees. The plaintiffs' memorandum addresses the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), that typically are considered in an attorney's fee award. As exhibits, the plaintiffs submit their counsels' fee itemization and the correspondence exchanged during fee negotiations. The plaintiffs' final request for attorney's fees totals $73,522.50, including the supplemental fee request for negotiating the fees and preparing the fee application. (Dk. 41, App. A; Dk. 47 at 10).

The defendant opposes the plaintiffs' fee request as unreasonable. Because she believes the plaintiffs' counsel utterly failed to exercise billing judgment, the defendant asks the court either to require the plaintiffs' counsel to submit a new fee itemization or to use its own experience and expertise and reduce the fee award accordingly. The defendant argues that the claimed fee rates exceed the market rate for comparable work and that the claimed hours include time not reasonably expended in this case. Using her suggested rates and reduced hours, the defendant arrives at the sum of $19,742.50, a more "realistic" fee award in her opinion. The defendant submits in support the affidavits from three Topeka attorneys who practice in the area of civil rights. These attorneys' different opinions on a reasonable fee range between $21,000 and $24,800.

■ The Civil Rights Attorney's Fees Awards Act of 1976, as amended in 1991, provides: "In any action or proceeding to enforce a provision of sections . . . , 1983, . . . ,

---

1. In that order, the court also denied the defendant's motion for summary judgment on the issues of standing, abstention, and facial validity of K.S.A. 21–4004.

the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The defendant does not dispute that the plaintiffs are prevailing parties, as the judgment entered in this case materially altered the legal relationship between the parties. *See Farrar v. Hobby*, — U.S. —, —, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 503 (1992). " '[A] reasonable attorney's fee' " is one that is " 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.' " *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5913). "[I]t contemplates reasonable compensation in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989). Normally, a reasonable attorney's fee is the product of multiplying reasonable hours by a reasonable rate. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). This "lodestar amount" is "the centerpiece of attorney's fee awards." *Blanchard*, 489 U.S. at 94, 109 S.Ct. at 944. In certain instances, the lodestar amount is then adjusted upwardly or downwardly to reflect other factors, such as those listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).[2] *Id.*

■ Rather than round two of the litigation, an attorney's fee request is an issue on which settlement should be quite possible. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. If no settlement is reached, the party requesting fees carries the burden of establishing the reasonableness of the fee application, *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir.1990), and of "documenting the appropriate hours expended and hourly rates," *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. "The applicant should exercise 'billing judgment' with respect to hours worked, ..., and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

■ "The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir.1987) (citation omitted). A court is to look "to the prevailing market rates in the relevant community" in calculating a reasonable fee. *Blum*, 465 U.S. at 895, 104 S.Ct. at 1547. The relevant community is the area in which the litigation occurs. *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983). The burden is with the applicant "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. Though a lawyer's customary billing rate is relevant, it is not conclusive. *Ramos*, 713 F.2d at 555; *see McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir.1988) (billing rates typically are in line with market rates). The court should factor in the quality of an attorney's performance in deciding on a reasonable rate. *Id.*

■ The plaintiffs have not submitted evidence of the prevailing rates charged by Topeka civil rights attorneys with the skill, experience and reputation comparable to their counsel. They have even failed to offer affidavits from their own attorneys concerning the reasonableness of the requested rate and their customary billing rates. The court finds no validity in the plaintiffs' excuse that to present this evidence would mean additional billable hours over which the defendant would lodge more objections. More than just another contentious matter, this evidence is intended "to inform and assist the court in the exercise of its discretion," *Blum*,

---

**2.** The lodestar calculation typically subsumes many of the *Johnson* factors, *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983), and carries a "strong presumption" that it represents a reason-able fee, *Blanchard v. Bergeron*, 489 U.S. 87, 95, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989) (quoting *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986)).

465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. The court is disappointed with this laxness in preparing the fee application.

Most of the plaintiffs' counsel have substantial experience in the civil rights area. Jonathan Phelps has practiced just over ten years and has litigated in state and federal court. Elizabeth Phelps' experience in civil rights litigation spans more than eight years with half of those years spent in private practice and the other half as legal advisor to the Shawnee County Sheriff. Margie Phelps is an experienced civil rights litigator. She appeared frequently in federal and state courts and often served as lead counsel while in private practice with the family's law firm. Because of their appearance and involvement in other cases, the court is familiar with the skill and experience of these three attorneys for the plaintiffs.

The defendant's fees experts aver that the prevailing hourly rate for Topeka civil rights attorneys of comparable skill and experience to Elizabeth Phelps and Jonathan Phelps is between $85 to $100. For associates who assist lead counsel, the prevailing hourly rate is between $75 to $95. The work of legal assistants is billed at an hourly rate between $25 to $45. For Topeka attorneys with more than ten years experience, one expert offered an hourly rate between $100 to $125. These suggested rates, in the court's opinion, fall towards the conservative end of hourly rates charged in Topeka.

The plaintiffs request hourly rates of $130 for Elizabeth Phelps, Jonathan Phelps, Shirley Phelps–Roper and Margie Phelps, $100 for Chris Davis and Rachel Phelps, and $50 for paralegals. The court agrees with the plaintiffs' counsels' self-assessment of their work. Their briefs were "high quality."[3] The writing was clear and direct, the arguments were cogent and meaningful, and the record was thorough and organized. Their approach to this litigation, analytically and factually, evidences much forethought and

preparation. They correctly identified from the beginning the legal hurdles of standing and abstention[4] facing them and fashioned their complaint accordingly. The plaintiffs took advantage of the related state criminal proceedings to create a record that served the same as discovery in this civil case. Because of this groundwork, the court was able to address the key legal issues early in the case, and the parties were able to settle the remaining disputes. All in all, the plaintiffs' counsel performed commendably and should be awarded commensurately. In this case, the court believes a reasonable hourly rate considering skill, experience, reputation and performance would be $125 for Margie Phelps, $110 for Elizabeth Phelps, Shirley Phelps–Roper and Jonathan Phelps, $90 for Chris Davis and Rachel Phelps, and $35 for the paralegals.

A court is to devote careful attention to whether the number of billed hours were reasonably expended. *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1201 (10th Cir.1986). Hours are not reasonably expended, though actually expended, if they are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. Unreasonable hours can occur when the attorneys lack skill or experience, overstaff the case, or fail to exercise billing judgment. *Id.* The defendant contends the hours billed by the plaintiffs' counsel were not reasonably expended because billing judgment was not exercised and because the case was overstaffed with attorneys.

Exact rules or formulas do not guide a court in determining what hours are reasonably expended. The discretion is with the district court to do what is equitable after making the relevant considerations. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award...." *Id.* at 436–37, 103 S.Ct. at 1941–42. The district court is

---

**3.** One of the defendant's experts even observed: "I have read through the file of the above-captioned case and found the quality of briefing done by the Phelps firm to be very adequate, thorough, well reasoned, and skillfully expressed...." (Dk. 46 at 2–3).

**4.** It was no small accomplishment for the plaintiffs' counsel to face these hurdles and marshal the facts necessary to clear them. The case law is replete with instances when plaintiffs have not avoided summary judgment on these issues.

not required to "identify and justify each disallowed hour" or to "announce what hours are permitted for each legal task." *Mares v. Credit Bureau of Raton,* 801 F.2d at 1202.[5] General reductions are permitted so long as the district court provides a concise explanation of its reasons. *Id.* at 1203.

The burden rests with the fee applicant to show that the claimed hours are reasonable. *Blum,* 465 U.S. at 897, 104 S.Ct. at 1548. The applicant should submit evidence in support, and if the documentation is "inadequate" then "the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Attorneys intending to ask for fees under § 1988 "must keep meticulous, contemporaneous time records." *Ramos,* 713 F.2d at 553. "These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks—for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on." *Id.* (footnote omitted). The records should be detailed enough for the court to separate out time spent on claims on which the party did not prevail, to identify hours that are unnecessary or excessive, and to determine if billing judgment was exercised. *See Hensley,* 461 U.S. at 434, 437, 103 S.Ct. at 1940, 1941.

The court agrees with the defendant that the plaintiffs' counsels' billing records do not meet these standards. The plaintiffs' records do not break down those hours billed by each attorney and those billed for the different relevant tasks. The plaintiffs' fee itemization uses a "cluster billing approach," that is, discrete tasks are often lumped together and assigned a total number of hours without attributing the time required for each task. Consequently, the court is unable to calculate precisely the hours billed on such discrete tasks, as research, complaint preparation, or brief writing. In addition, several notations for "attorney conferences" and for "legal research" fail to disclose the purpose or subject of the activity. At a minimum, "counsel should identify the general subject matter of his time expenditures." *Hensley,* 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12 (citation omitted). Relying on its own experience and knowledge of the case, the court can infer in most instances the general subjects of those entries and estimate the time required for the separate tasks. The descriptions as a whole are not so deficient as to preclude the defendant from arguing or the court from determining what hours were reasonably expended. The court, however, believes it should reduce the requested hours by a small percentage because of several inadequate descriptions and for the general lack of documentation.

A court is to act like a senior partner in a private law firm and deduct from a fee application those hours that would not be billed to the client. *Ramos,* 713 F.2d at 555, 557. This entails considering if the total hours billed by each lawyer are in line with what average lawyers are able to bill in a week and year, if particular tasks are properly billed to the client or absorbed as firm overhead, and if the hours billed for a specific task are reasonable for the case and circumstances. *Ramos,* 713 F.2d at 554. When the number of hours requested for the entire case or for a particular task significantly exceeds the norm and cannot be explained by a justifiable circumstance, the court should reduce those hours to what is reasonable. *Id.* The court also must scrutinize billing records for potential duplication of services when there is more than one attorney on the case. *Id.* The court should not allow more than one attorney to bill for performing a single task unless warranted by the complexity of that task. The court should pay close attention to the number of attorneys billing for each hearing or proceeding, the role being assumed by each attorney, and the number of attorneys appearing for the other side. *Id.*

The defendant argues the plaintiffs' counsel exercised no billing judgment and are requesting compensation for hours not reasonably expended. Rather than delay this

---

**5.** "Such a rule would lead to disagreement of the most odious sort between court and counsel." *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1202 (10th Cir.1986).

matter by having the plaintiffs submit a new fee application, the court will exercise its discretion and make a general deduction for each of the different categories where hours were billed for services not reasonably expended.

■ Hours spent reading background cases or familiarizing oneself with the general area of law should be absorbed in the firm's overhead and not be billed to the client. *Ramos,* 713 F.2d at 554. The plaintiffs' fee itemization includes some hours that fall into the category of background research. For example, there are two separate billings for general research into remedies, immunities and damages under § 1983.

■ The plaintiffs are not entitled to most of the hours that their counsel billed for reviewing Topeka Police Department video tapes taken of the plaintiffs' anti-homosexual pickets. The plaintiffs have not carried their burden of showing the reasonableness of those hours. The plaintiffs' counsel should have had a general knowledge of what was on the video tapes since they, their clients, and/or their witnesses had participated in the pickets. Video tapes were not submitted as exhibits in the summary judgment proceedings. The plaintiffs' counsel do not suggest that discovery deadlines or other scheduled events in the case required this preparation. The court does not consider such a complete and detailed review of video tapes at that early stage of the litigation to be hours reasonably expended.

■ Conferences between attorneys are proper billable time if reasonable and necessary. *See City of Riverside v. Rivera,* 477 U.S. 561, 573 n. 6, 106 S.Ct. 2686, 2693 n. 6, 91 L.Ed.2d 466 (1986). Like a senior partner, the court should allow only that fee which is reasonable considering the need for and value of the conference. The court also should satisfy itself that the billed attorney conference is not an instance of overstaffing or a duplication of legal efforts. An example here of overstaffing is where four attorneys billed four hours each for an attorney confer-

ence concerning a motion for preliminary injunction.

■ The defendant calls it an "insult to the sensibilities of this court" for the plaintiffs to ask for $39,922.50 in attorney's fees for the evidentiary hearing in *State v. Jonathan B. Phelps.* The defendant's verbiage stands alone, as she cites no legal authority for her position that none of these fees are recoverable.[6] The defendant does argue that the state criminal case proceeded independent of this federal court action and that the attorneys would have defended Jonathan Phelps whatever the posture of the federal case.

The evidentiary hearing in *State v. Jonathan B. Phelps* was held on Jonathan Phelps' motion to dismiss the criminal charges and motion to disqualify the District Attorney of Shawnee County, Kansas, who is the defendant in the federal case. At the hearing, counsel for Jonathan Phelps presented evidence in an effort to show that Phelps was a victim of selective prosecution and that circumstances required the disqualification of the prosecutor. Phelps' counsel called over twenty witnesses, including the District Attorney Joan Hamilton, her husband, various city officials, police officers, Jonathan Phelps, other anti-homosexual picketers, and persons who recalled hearing Joan Hamilton talk about the picketers during her political campaign.

This testimony and the exhibits from that state evidentiary hearing served the plaintiffs well in opposing the defendant's motion for summary judgment on abstention and standing. This evidence substituted for the discovery that normally would have been required before the filing of dispositive motions. The plaintiffs extensively cited to this state court record in their summary judgment memoranda. The court carefully reviewed that evidence and referred to it in the order denying the defendant's motion for summary judgment on abstention and standing. (Dk. 29 at 28–31.) It is fair to say that the evidence obtained during this related state evidentiary hearing was significant in this court's summary judgment decision.

**6.** In fact, two of her experts on attorney's fees opine that the plaintiffs are entitled to recover a portion of those hours spent in the criminal proceeding.

To be compensable under § 1988, time must be " 'reasonably expended *on the litigation.*' " *Webb v. Dyer County Board of Education,* 471 U.S. 234, 242, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985) (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939). "[T]he work done by counsel ... [need] not occur in the context of traditional judicial litigation" to be part of a reasonable attorney's fee award. *Pennsylvania v. Delaware Valley Citizens Council,* 478 U.S. 546, 560, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986). In *Webb,* the Supreme Court held that an attorney's work during an optional administrative proceeding would not be compensable under § 1988 unless the entire work or any discrete portion of it was " 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Pennsylvania,* 478 U.S. at 561, 106 S.Ct. at 3096 (quoting *Webb,* 471 U.S. at 243, 105 S.Ct. at 1928). This standard applies even to prior proceedings that are "not a 'proceeding to enforce' one of the § 1988 civil rights laws." *N.C. Dept. of Transp. v. Crest St. Council,* 479 U.S. 6, 15, 107 S.Ct. 336, 341, 93 L.Ed.2d 188 (1986). "Application of this standard is left to the discretion of the district court." *Pennsylvania,* 478 U.S. at 561, 106 S.Ct. at 561 (citation omitted).

In the exercise of that discretion, some courts have rejected hours for work performed in defending the federal plaintiff against criminal charges in state court arising from the same or similar incident on which the federal action was brought. *See, e.g., Mayson v. Pierce,* 806 F.2d 1556, 1558 (11th Cir.1987) (Title VII); *Greer v. Holt,* 718 F.2d 206, 207–08 (6th Cir.1983) (§ 1988); *Kyreakakis v. Paternoster,* 732 F.Supp. 1287, 1294–95 (D.N.J.1990) (§ 1988). These courts read § 1988 narrowly as allowing fees for only work performed in the federal action to enforce civil rights. As for the Supreme Court's expansive reading of § 1988, they distinguish this precedent as involving related administrative proceedings and not a state criminal case. *Kyreakakis,* 732 F.Supp. at 1294–95. Finally, they emphasize that the criminal defense attorneys were required to defend the federal plaintiff irrespective of their representation in the federal action. *Greer,* 718 F.2d at 208.

Other courts have awarded partial fees when the state criminal work functionally substituted for work that would have been necessary in the federal action. *See, e.g., Perkins v. Cross,* 728 F.2d 1099, 1100 (8th Cir.1984) (§ 1988 fees can be awarded for research and investigation performed for the state criminal proceeding "which proved directly relevant to the successful prosecution of the later civil rights claims"); *Cerva v. E.B.R. Enterprises, Inc.,* 740 F.Supp. 1099, 1104 (E.D.Pa.1990) (allowed § 1988 fees for hours spent at preliminary hearing "as time reasonably allotted to exposure to facts relevant to plaintiff's civil rights action, which arose from the criminal charge against plaintiff."); *Fletcher v. O'Donnell,* 729 F.Supp. 422, 429–30 (E.D.Pa.1990) (allowed § 1988 fees for a portion of the state criminal trial because the attorney could have billed for reviewing the trial transcript); *cf. McDonald v. Armontrout,* 860 F.2d 1456, 1462 (8th Cir. 1988) (permitted § 1988 fees for work in habeas action as it " 'obviated the need for comparable work in' this proceedings, and 'contributed directly to [its] successful outcome.' " (quoting *Webb,* 471 U.S. at 249–50, 105 S.Ct. at 1931–33 (Brennan, J., concurring in part and dissenting in part))).

This latter line of precedent is more in keeping with the Supreme Court's expansive interpretation of § 1988. Neither the stated rule nor the reasoning behind it expressly precludes the *Webb* standard from applying to discrete portions of a defense attorney's work in state criminal proceedings when that work is useful and of a type ordinarily necessary to advance the civil rights litigation to the stage where the final result is obtained. Here the plaintiffs' counsel's work in preparing for and conducting the evidentiary hearing in *State v. Jonathan B. Phelps* was directly relevant to the federal civil rights action. A portion of that time was the substantial "equivalent to the time that would have been spent preparing the affidavits [and taking the depositions] necessary to respond to ... [the] summary judgment motion." *Webb,* 471 U.S. at 243 n. 19, 105 S.Ct. at 1928 n. 19. Not only was the state record useful in defending against the defendant's motion for summary judgment, but it advanced the

federal court action to the point that dispositive motions could be filed and the issues of abstention and standing could be settled. Of the total time requested by the plaintiffs, the court finds sixty-five hours by Margie Phelps and ten hours by Elizabeth Phelps to be reasonably expended for the direct benefit of the federal civil rights action. The court disallows the other hours billed for the state evidentiary hearing as duplicative and unnecessary to the federal civil rights action.

 A few loose ends remain. The plaintiffs do not seek an upward adjustment of the lodestar, and the court does not believe the situation warrants one. The court forgoes specifically addressing each of the factors from *Johnson* because they are either inapplicable or subsumed in the court's lodestar calculation. Finally, the plaintiffs are entitled to recover for their counsel's time in seeking fees and resolving the fee issue. *See Bratcher v. Bray–Doyle Independent School Dist.*, 8 F.3d 722, 726 (10th Cir.1993); *Iqbal v. Golf Course Superintendents Ass'n of America*, 900 F.2d 227, 229 (10th Cir.1990).

The court finds the following total hours and rates are reasonable in this case: Margie Phelps—65 hours times $125 per hour or $8,125; Elizabeth Phelps—184.5 hours times $110 or $20,295; Jonathan Phelps—25.75 hours times $110 or $2832.50; and for the other attorneys and the paralegals—$3350. The plaintiffs are entitled to recover $34,602.50 as reasonable attorney's fees.

IT IS THEREFORE ORDERED the plaintiffs' fee application (Dk. 41) is granted in part and the plaintiffs are awarded the sum of $34,602.50 for their attorney's fees.