Oliver **BROWN**, et al., **Plaintiffs**,

and

**Charles and Kimberly Smith, minor children by their mother and next friend, Linda Brown Smith, et al., Intervening Plaintiffs,**

v.

**UNIFIED SCHOOL DISTRICT NO. 501, SHAWNEE COUNTY, KANSAS, Defendant.**

No. T–316.

United States District Court, D. Kansas.

Feb. 21, 1995.

Richard E. Jones, Jones & Jones, Topeka, KS, Christopher A. Hansen, Victor A. Bolden, ACLU Nat. Legal Dept., New York City, for plaintiffs.

Dan Biles, Gates & Clyde, Chartered, Overland Park, KS, Charles N. Henson, K. Gary Sebelius, Anne L. Baker, Wright, Henson, Somers, Sebelius, Clark & Baker, Carl A. Gallagher, Office of the Atty. Gen., Charles D. McAtee, Topeka, KS, Robert T. Stephan, Lenexa, KS, for defendant.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon plaintiffs' motion and supplemental motion for attorneys' fees and costs.

■ As defendant concedes, the controversy over plaintiffs' motions is not whether plaintiffs recover their attorneys' fees and costs, but how much should be recovered. A prevailing party in a case brought under federal civil rights law is entitled to recover his or her reasonable attorney's fees. 42 U.S.C. § 1988; *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). It is undisputed that plaintiffs are a prevailing party in this action. See *Texas Teachers Ass'n v. Garland School Dist.,* 489 U.S. 782, 791, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (a "prevailing party" must prevail "on any significant claim affording some of the relief sought.").

■ To determine what fees and expenses are reasonable, the court must calculate the number of hours reasonably expended on this litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart, supra,* 461 U.S. at 433, 103 S.Ct. at 1939. The court shall start by discussing what should be a reasonable hourly rate for plaintiffs' attorneys in this matter.

#### 1. *Hourly rate*

##### a) *Local vs. nonlocal rate*

■ Plaintiffs claim that they should recover fees for the time of their nonlocal counsel at rates of $125.00 to $300.00 an hour and fees for the time of their local counsel at the rate of $175.00 an hour. Plaintiffs also ask that the work of paralegals, law clerks or legal interns be compensated at a "nonlocal" rate of $85.00 an hour. Plaintiffs were substantially assisted in this case by four counsel from the New York headquarters of the American Civil Liberties Union, as well as paralegal personnel with the ACLU in New York.[1] That these counsel and paralegal staff worked for a non-profit organization is of no consequence. " 'Reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit coun-

---

1. Actually, more than four ACLU counsel worked on this case. But, plaintiffs' motions seek compensation for the time of four attorneys from the ACLU. Plaintiffs, in the exercise of billing judg-

ment, decided not to ask for compensation for the time of some attorneys and paralegal personnel who worked on this case.

sel." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

Many factors, such as skill, experience and reputation, may play a part in the decision of what is "the prevailing market rate in the relevant community." *Id.* at 895 n. 11, 104 S.Ct. at 1547 n. 11. The burden is on the plaintiffs to show that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 895 n. 11, 104 S.Ct. at 1547 n. 11.

One question the court must decide is what is the "relevant community" for determining the market rate for counsel. In other words, should a local rate or a nonlocal rate of compensation apply? In a class action challenging prison conditions in the maximum security unit of a Colorado penitentiary, the Tenth Circuit stated: "Absent more unusual circumstances than we see in this case, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983). In other words, in that civil rights action, the Tenth Circuit determined that the "relevant community" was the location where the trial was conducted. See also, *In re "Agent Orange" Product Liability Litigation,* 818 F.2d 226, 232 (2d Cir.1987) (relevant community for fee determination is community where trial court sits). Noting the substantial volume of civil rights litigation filed nationwide, the Tenth Circuit further declared that prisoner rights cases were not so specialized that the "relevant community" should be expanded beyond Denver or any other metropolitan area. The court also commented that no different rule should apply to other areas of civil rights law. "Most other substantive areas of civil rights law have become sufficiently familiar that reasonably competent lawyers who do civil rights work should be able to function at both the trial and appellate level." *Id.;* see also, *Jane L. v. Bangerter,* 828 F.Supp. 1544, 1551–52 (D.Utah 1993) (local area fee rates applied in abortion rights litigation).

Plaintiffs argue that a different rule should be applied to this case because local counsel were not willing or not able to perform the work or advance the money necessary for plaintiffs' representation. Plaintiffs assert that this was an unpopular case which required a large number of hours and huge expenses. The ACLU advanced more than $200,000.00 during the course of the litigation. Most of this was advanced before plaintiffs knew they would prevail, although a substantial amount was paid during the remedy phase of this litigation. Plaintiffs also urge the court to consider the impact of the decision in *West Virginia University Hospitals v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). There, the Court held that expert witness costs normally cannot be recovered under § 1988. Plaintiffs argue that this decision increases the reluctance of counsel to take cases like the instant case. Finally, plaintiffs contend that the dearth of class action civil rights cases filed by the local bar proves that local attorneys are adverse to bringing school desegregation cases.

The court rejects these arguments. The court believes attorneys' fees should be awarded on the basis of local rates in this case.

The court firmly believes the local bar was competent to tackle whatever factual and legal difficulties this case presented. In fact, local attorneys have represented plaintiffs since the beginning of the case. Local attorneys alone have represented defendant. In the court's opinion, the difficulty of this case has not stemmed from its factual complexity (the school district is relatively small and its history is straightforward), but from the ambiguity of school desegregation law and, perhaps, the "closeness" of the facts. The facts were not at issue in this case as much as the conclusions to be drawn from the facts. Plaintiffs' lead nonlocal counsel during the trial and appeal stages (Christopher A. Hansen) did not have any previous experience in school desegregation cases before he entered his appearance in this case. Mr. Hansen undoubtedly had helpful experience in factually complex civil rights litigation. But, there were many other attorneys in this community who had sufficient experience in cases of comparable complexity to conduct this litigation, although they too did not have direct experience in school desegregation

cases. Therefore, Mr. Hansen's overall experience, and that of his colleagues,[2] does not by itself warrant reimbursing plaintiffs for their hours at a nonlocal rate, since local attorneys were available with sufficient expertise to conduct this litigation. See *Beard v. Teska*, 31 F.3d 942, 957 (10th Cir.1994) (nonlocal attorney with substantial civil rights litigation experience not entitled to his higher established rate when local attorneys with expertise in the issues in question were available to conduct the case).

Plaintiffs have suggested that local attorneys were unwilling to take on this case because it was unpopular or would be too expensive to litigate. We do not accept this rationale for nonlocal rates for the following reasons. First, local attorneys in fact were willing to work on this case and did represent plaintiffs. Second, given the reputation of this case as one of the great cases in American jurisprudence, it is difficult to conclude that no attorney in the area was willing to be actively involved for fear of being unpopular. We note that plaintiffs' local counsel are not asking for an enhanced fee rate because of any social stigma. We also note that any such enhancement should rarely be given. See *Ramos v. Lamm, supra,* 713 F.2d at 558. Third, civil rights litigation filed by local attorneys has always been a major part of the docket in this court. Local attorneys in this court's experience have not shied away from civil rights cases, even though those cases may be considered controversial or anti-establishment. In fact, local attorneys attempted to proceed with other school desegregation litigation in the 1970s but were rebuffed by the pendency and reactivation of this case. See *Miller v. Board of Education* and *Chapman v. Board of Education,* Case

Nos. 79–1473 and 79–1408 (D.Kan., unpublished, 6/17/80). Fourth, the small number of class action civil rights suits filed in Topeka is not dispositive of the "relevant community" question in our opinion. See *Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 141 (8th Cir.1982) (out-of-state counsel not required simply because the case was the first adult-movie zoning case in the state). To reiterate, based on the court's assessment of litigation in this court and others in the area, local counsel are not too timid or provincial to bring a case such as the one at bar. Finally, the affidavits filed by plaintiffs do not indicate that plaintiffs attempted to find other local attorneys to assist them in funding and staffing this case. Indeed, one affidavit indicates that plaintiffs "did not seriously consider adding additional Topeka counsel" before seeking the assistance of a national organization because it was "obvious" that local counsel and local finances were not available for this case. While this conclusion was "obvious" to plaintiffs, it is not obvious to the court when four or five local counsel were assisting plaintiffs at the time and other local counsel were bringing civil rights litigation including school desegregation litigation.

Plaintiffs have attempted to buttress their conclusion by noting the time and expense this case has required. But the court does not believe the time and expense in hindsight is relevant. Indeed, from the advantage of hindsight, much of the time and expense in this case appears of questionable utility. The court is mindful that it is not always fair to judge the value of litigation decisions in hindsight.[3] But, neither should the impact of time and expense be exaggerated to suggest that local counsel were unable or unwilling to handle this case.[4]

---

2. The court acknowledges that E. Richard Larson had some experience in school desegregation cases prior to entering this litigation. Mr. Larson was the primary counsel for the ACLU in this matter before Mr. Hansen took his place. The court does not believe Mr. Larson's experience was so unique and beneficial to the case that it warrants a rate of compensation above the local norm. School desegregation law was not an emerging field when this case was reopened in 1979. A plethora of cases and resources were available which any reasonably skilled attorney could rely upon to provide competent representation to his or her client.

3. For this reason, the court has not subtracted some of these "questionable" hours from its reasonable hours computation.

4. We acknowledge the affidavit of Arthur Benson who has described the difficulties he faced in finding help from local attorneys in litigating the desegregation case involving Kansas City, Missouri schools. We believe this affidavit is of limited relevance. Although this case has a "bigger" name, the Kansas City case is much bigger litigation. Furthermore, activity of local counsel in this case contradicts the assertion that local counsel were unwilling and unable to pursue this

Finally, for several reasons, the court does not believe the financial resources the ACLU was able to contribute to this case should dictate that a nonlocal rate be used to compensate the ACLU's attorneys. First, the evidence before the court indicates that local counsel have advanced comparable sums of money in other litigation. Therefore, local counsel are not necessarily adverse to advancing substantial funds in a case. Second, this case could have been prosecuted with less money expended for experts without affecting the result. For example, the expenditures made to Central Surveys, Inc., Dr. Speer, and perhaps even Dr. Crain might have been deleted entirely. Moreover, the amount spent for Mr. Lamson's work (over $70,000.00) seems excessive. Lastly, it does not seem logical that the relevant community for determining the market rate for counsel should be decided by the location of the headquarters of the organization advancing money for the lawsuit. The headquarters site is determined by arbitrary factors unrelated to the market of and market rate for attorneys in this community. See *Louisville Black Police Officers Organization, Inc. v. City of Louisville*, 700 F.2d 268, 277 (6th Cir.1983) (Legal Defense Fund's choice of New York City as a headquarters site should no more require the application of New York City rates than would Oswego, New York rates automatically be required if the LDF decided to relocate in that city.).

The above discussion is relevant to plaintiffs' contention that the holding in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) requires the application of a nonlocal rate, or perhaps an enhanced local rate, in this case. Under the *Casey* decision, plaintiffs' expert witness fees cannot be shifted to defendants under § 1988. The court believes that local counsel could have duplicated the financial resources which were expended to prosecute this action. We also believe plaintiffs would have achieved the same result in this case even if they had spent significantly less for expert services. Local counsel also would have faced less travel, hotel and relat-

ed expenses. For these reasons, we remain convinced that local counsel could have competently and professionally prosecuted this case, even considering the *Casey* decision. Therefore, we do not think a nonlocal rate or an enhanced local rate should be used to compensate for the financial burden of paying expert witness fees.

For all the reasons previously mentioned, the court believes the relevant community for the purposes of determining the market rate for compensation is Topeka, Kansas.

#### b) *The local rate*

■ Both sides have submitted affidavits to support their positions regarding what the court should award as the local market rate for attorney compensation. The court shall not detail the substance of the various affidavits. Plaintiffs' affidavits from private attorneys in Topeka who have prosecuted civil litigation suggest a rate no less than $150.00. Defendant's briefs include affidavits from attorneys with the larger firms in Topeka who suggest a rate no more than $125.00. The court notes that none of plaintiffs' local attorneys have submitted an affidavit which recites an established rate of charge. We also note that there are no affidavits from other attorneys in Topeka which quote an established rate of $175.00, although that is the rate requested by plaintiffs in this case.

■ Two arguments made for a higher rate are the delay in receiving payment and the contingent nature of this case. In other words, plaintiffs' counsel have not been paid since they started working on this case in 1979, and payment was contingent on winning the case. The court shall attempt to compensate for the delay in this case by paying all hours reasonably expended in this case at 1995 rates. See *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). We do not believe the contingent nature of any fee recovery is an effective argument for rate enhancement in this case. Such an enhancement was rejected by the U.S. Supreme Court in *City of*

matter. Finally, it appears that counsel in the Kansas City case were compensated on the basis of "local" rates, although those rates are considerably higher than the prevailing rates in this community.

*Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

The court has reviewed several recent cases in which attorney's fees have been granted pursuant to § 1988 or comparable statutes. The rates granted generally have not exceeded $125.00. *Tyler v. City of Manhattan,* 866 F.Supp. 500 (D.Kan.1994); *Franz v. Lytle,* 854 F.Supp. 753 (D.Kan.1994) ($125.00 an hour awarded in a § 1983 case arising from Wichita—court took judicial notice that the hourly rates in Topeka were much less); *Phelps v. Hamilton,* 845 F.Supp. 1465 (D.Kan.1994); *Woods v. Shawnee Gardens,* 1993 WL 545220, 1993 U.S. Dist. LEXIS 18477 (D.Kan. 12/1/93) (a Title VII action in Kansas City in which the court stated $150.00 was too high for a Title VII case); *Lee v. Farmers Insurance Co.,* 1992 WL 331340, 1992 U.S. Dist. LEXIS 17116 (D.Kan. 10/26/92) ($125 an hour requested and granted in a Title VII action brought in Kansas City); but see, *Oliphant v. Perkins Restaurants Operating Co.,* 1995 WL 7729, 1995 U.S. Dist. LEXIS 178 (D.Kan. 1/6/95) ($135.00 an hour awarded in a case brought in Kansas City).

In light of these cases, the affidavits, the court's evaluation of the difficulty of this case, and the court's own familiarity with the prevailing rates in the area, the court shall award $125.00 an hour for the time charged by attorneys Christopher Hansen, Richard Jones and E. Richard Larson. The court shall award $90.00 an hour for the time charged by attorneys Joseph Johnson, Charles Scott, Jr. and Victor Bolden. The court shall award $75.00 an hour for the time charged by Jon Dubin. The court has decided on a lower rate for some counsel based upon the attorneys' reduced role in the litigation and, in the case of Bolden and Dubin, lesser experience as attorneys.

### 2. *Reasonable number of hours*

■ The court must decide what amount of hours was reasonably expended on this case. *Hensley v. Eckerhart, supra,* 461 U.S. at 434, 103 S.Ct. at 1939. The burden is on the plaintiffs to show that the claimed hours are reasonable. *Blum v. Stenson, supra,* 465 U.S. 886 at 897, 104 S.Ct. 1541 at 1548 (1984).

The court acknowledges that plaintiffs have voluntarily reduced the amount of hours for which they request compensation. These reductions have been made to account for hours spent on issues litigated unsuccessfully against state defendants, hours for which contemporaneous time records were not kept, and as an exercise in billing judgment.

■ The court believes some additional reductions are necessary. The court shall make further cutbacks from the amount of hours claimed by plaintiffs' counsel or persons working for plaintiffs' counsel for the following reasons. First, the court does not believe the time spent by "volunteer" paralegals (Matthew Daniels, Gladys Chen and Paul Mulbrecht) should be charged to defendant. Since these people are labeled as "volunteers," the court assumes they were not paid by the ACLU. The court does not believe a private law firm would charge a client for the work of an unpaid volunteer. Therefore, the court does not believe the hours worked by volunteers in this case should be compensated. See *Hart v. Bourque,* 608 F.Supp. 1091, 1093 (D.Mass.1985) *rev'd on other grds,* 798 F.2d 519 (1st Cir. 1986).

■ Second, the court shall compensate plaintiffs for the research work of Alan Jenkins at a lower amount than requested. The vast majority of this time is only generally described as "research" in the time records submitted by plaintiffs. Mr. Jenkins' affidavit states that he did this work in 1984 when he was employed as a college student to do research on remedial options available in this case. However, in 1984 there had been no decision that an additional remedy was required. Moreover, there is no indication that this research was useful in determining or arguing what the ultimate remedy should be in this case. Because of these problems with documentation and the questionable utility of Mr. Jenkins' work, the court shall award plaintiffs compensation for half of the hours claimed by Mr. Jenkins at a rate of $25.00 an hour. The rate of compensation is consistent with the range of rates cited in affidavits from local attorneys filed in this case.

The court shall also make small reductions in the hours claimed by plaintiffs' attorneys to account for background research and for overstaffing during conferences, depositions and hearings in this case. In reviewing the billing statements of counsel, there are instances where the court believes more counsel than were needed appeared at conferences, depositions and hearings. Also, the large number of counsel created the need for additional conferences among plaintiffs' attorneys and multiplied the cost of such conferences. We also believe that some duplication of effort was required when Mr. Hansen took over for Mr. Larson in this case. In making the reductions, the court shall not specifically identify the hours which are being disallowed. See *Zuchel v. City and County of Denver*, 997 F.2d 730, 744–45 (10th Cir.1993) (no requirement that district courts identify and justify each disallowed hour).

■ Finally, the court shall not compensate counsel for travel time since, in the court's estimation, this case could have been litigated by local counsel. See *Iqbal v. Golf Course Superintendents Ass'n of America*, 717 F.Supp. 756, 757 (D.Kan.1989) *aff'd*, 900 F.2d 227 (10th Cir.1990); *Jane L. v. Bangerter, supra*, 828 F.Supp. at 1549. The court has only cut out travel time between New York and Topeka by plaintiffs' New York counsel. The court shall compensate plaintiffs for attorney travel time to out-of-town depositions.

■ Defendant has argued that significant reductions should be made in the number of hours for which plaintiffs' counsel are compensated to account for plaintiffs' less than complete success in this case. We reject this argument. The Supreme Court has stated:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of

the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Hensley v. Eckerhart, supra*, 461 U.S. at 435, 103 S.Ct. at 1940 (citation omitted).

We believe that plaintiffs' claims for relief in this case are related and have involved a common core of facts. Plaintiffs have obtained significant relief because of their efforts—"excellent results"—in the terminology of the *Hensley* case. Consequently, the court refuses to reduce the number of hours for which compensation is awarded because of defendant's claim that plaintiffs were less than completely successful.

Defendant has asked for additional reductions from plaintiffs' total of compensable hours for time spent on issues relating to state defendants. Defendant has a fair argument here. But, the hours defendant identifies may have been relevant to issues not solely connected with the state parties. Therefore, the court shall not make additional cutbacks of this type.

■ Defendant has also asked that no award be made for the time spent by Charles Scott, Jr. because of a lack of documentation and possible duplication. The court finds that the lack of documentation should be excused because of a fire which destroyed Mr. Scott's records. The court shall make some reduction in the fees requested for Mr. Scott's services on the basis of the factors mentioned earlier. But, the court shall not eliminate his fees entirely.

### 3. Costs

■ As part of an attorney's fees award under § 1988, plaintiffs are entitled to reimbursement for costs or expenses which are normally charged to clients by attorneys. *Ramos v. Lamm, supra*, 713 F.2d at 559.

█ The court shall make the following reductions in plaintiffs' claims for costs. The court shall not reimburse plaintiffs for the costs of their expert witnesses. As previously stated, in *West Virginia University Hospitals v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), the Court held that the cost of expert witnesses normally cannot be recovered under § 1988. Plaintiffs' efforts to distinguish the instant case from the holding in *Casey* are not persuasive. Plaintiffs have suggested that their experts should be considered court-appointed experts for whom compensation is allowed under 28 U.S.C. § 1920. The court did not appoint plaintiffs' expert witnesses. Hence, the court shall not consider them to be court-appointed experts.[5] The court also finds that the post-judgment status of this case does not provide good cause to shift the cost of plaintiffs' expert witnesses to defendant under § 1988.

█ The court also shall not reimburse plaintiffs for attorney travel costs, lodging and other expenses incurred by non-local counsel for trips between New York and Topeka. Further, reimbursement shall not be granted for secretarial and word processing costs. The travel costs were not reasonably expended because the court believes local counsel could have litigated this case. See *Ramos v. Lamm, supra*, 713 F.2d at 559. Secretarial and word processing costs are part of the overhead expenses of a normal law firm, in the court's opinion, and should not be assessed against an adversary in litigation. See *Hollowell v. Gravett*, 723 F.Supp. 107, 111 (E.D.Ark.1989); *Cole v. Tuttle*, 462 F.Supp. 1016, 1020 (N.D.Miss. 1978).

### 4. *Other factors*

The court does not believe there are any factors, such as those described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), which require upward or downward adjustments in the award of fees and costs in this case.

---

**5.** However, plaintiffs' argument does suggest a possible cheaper alternative of trying cases—i.e., by asking the court to appoint an expert witness.

### 5. *Conclusion*

Plaintiffs' motions are granted, and defendant shall pay plaintiffs' fees and costs based on the following calculations:

Mr. Hansen—1,953 hrs at $125/hr = $244,125.00

Mr. Jones—1,175 hrs at $125/hr = $146,875.00

Mr. Bolden—220 hrs at $90/hr = $19,800.00

Mr. Larson—218 hrs at $125/hr = $25,875.00

Mr. Dubin—88 hrs at $75/hr = $6,600.00

Mr. Johnson—123 hrs at $90/hr = $11,070.00

Mr. Scott—240 hrs at $90/hr = $21,600.00

Mr. Jenkins—167 hrs at $25/hr = $4,175.00

COSTS—$41,451.97

TOTAL AWARD—$521,571.97

**IT IS SO ORDERED.**

See *McKinney v. Anderson*, 924 F.2d 1500, 1510–11 (9th Cir.) *vacated on other grds*, 502 U.S. 903, 112 S.Ct. 291, 116 L.Ed.2d 236 (1991).