**T.Y., a minor, by her next friend, Lynette PETTY, B.A., a minor, by his next friend, P.C., D.S., a minor by his next friends, A.M. and Lynette Petty, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SHAWNEE; Donald J. Cooper, Chairman, Victor W. Miller, Vice–Chairman, Winifred Kingman, member of the Shawnee County Commission, in their official capacities;**

Earl Hindman, Director of the Shawnee County Department of Corrections, in his official capacity; Gary Bayens, Administrator of Shawnee County Youth Center, in his official capacity, Defendants and Third–Party Plaintiffs,

v.

STATE OF KANSAS, DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, and Donna L. Whiteman, the Secretary of Social and Rehabilitation Services, in her official capacity; Board of Education–Unified School District 501, Shawnee County, Kansas, Third–Party Defendants.

Civil A. No. 94–4079–DES.

United States District Court, D. Kansas.

Dec. 29, 1995.

Larry R. Rute, Kansas Legal Services, Inc., Topeka, KS, Claudia J. York, Shughart, Thomson & Kilroy, Kansas City, MO, Charles J. Hyland, Sprint Communications Company L.P., Law Department, Kansas City, MO, and Judith A. Jones, Hiawatha, KS, for plaintiffs Lynette Petty.

Mark L. Bennett, Jr., Ann L. Hoover, Bennett & Dillon, Topeka, KS, Susana L. Valdovinos, and Sandra L. Jacquot, Office of the County Counselor, Shawnee County, Kansas, Topeka, KS, for County of Shawnee, Kan., Donald J. Cooper, Victor W. Miller,

Winifred Kingman, Earl Hindman, and Gary (NMI) Bayens.

Michael George, Kenneth R. Smith, Kansas Department of SRS, Topeka, KS, for Kansas Department of Social and Rehabilitation Services, and Donna L. Whiteman.

John D. Ensley and Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Unified School District 501, Topeka.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the plaintiffs' motion for attorney's fees and costs (Doc. 120).

## I. BACKGROUND

The plaintiffs filed this action on May 19, 1994, as a class action pursuant to 42 U.S.C. § 1983. The plaintiffs filed an amended complaint on June 3, 1994. The plaintiffs' suit challenged the conditions of confinement at the Shawnee County Youth Center ("SCYC"), and certain policies and practices employed in the administration of SCYC. On June 23, 1994, the plaintiffs filed a motion for a preliminary injunction to restrain the defendants from employing certain practices and procedures at SCYC pending final resolution of this action.

On July 5, 1994, the defendants filed an answer to the plaintiffs' complaint. The defendants also filed on that date their complaint against the third-party defendants. The defendants submitted that they were not liable to the plaintiffs, but that in the alternative, judgment should be entered against the third-party defendants in an amount equal to the defendants' liability.

On August 2, 1994, the court approved a Joint Stipulation of Partial Settlement of Motion for Preliminary Injunction executed by the plaintiffs and defendants. In the stipulation, the defendants agreed to amend certain policies and practices to the extent they did not conform to Kansas Administrative Regulations. On November 21, 1994, the court approved a second Joint Stipulation of Partial Settlement, executed by the plaintiffs, the defendants, the Kansas Department of Social and Rehabilitation Services, and Donna L. Whiteman, Secretary of Social and

Rehabilitation Services ("SRS"), which addressed the issue of overcrowding at SCYC. Finally, on July 28, 1995, the court approved a Settlement Agreement and Consent Decree executed by all parties. This third agreement settled all remaining issues in the case as to conditions, policies, and practices at SCYC.

## II. DISCUSSION

### A. Prevailing Party Status

 42 U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." The purpose of the statute is to "ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting H.R.Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976)), U.S.Code Cong. & Admin.News 1976 at 5908. In light of the statute's broad purpose, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* at 429, 103 S.Ct. at 1937 (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

Courts have consistently held that a plaintiff may be a "prevailing party" under § 1988(b) even where there has been no judicial determination that the plaintiff's rights have been violated. *See, e.g., Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). The legislative history of the statute indicates that Congress intended such an interpretation. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), U.S.Code Cong. & Admin.News 1976 at 5912. ("for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief").

 Where there has been no judicial determination on the merits, the Tenth Circuit applies a two-prong "catalyst" test to deter-

mine whether a plaintiff has prevailed for purposes of obtaining attorney's fees. *Foremaster v. City of St. George,* 882 F.2d 1485, 1488 (10th Cir.1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990). "A plaintiff must show '(1) that [the] lawsuit is causally linked to securing the relief obtained, and (2) that the defendant's conduct in response to the lawsuit was required by law.'" *Id.* at 1488 (quoting *J & J Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1473 (10th Cir.1985)). The Tenth Circuit elaborated on these requirements in *Beard v. Teska,* 31 F.3d 942, 952 (10th Cir.1994). To meet the first prong of the test, a plaintiff must show that its action "is a substantial factor or significant catalyst" leading to the relief obtained. *Id.* at 952 (quoting *American Council of the Blind of Colo., Inc. v. Romer,* 962 F.2d 1501, 1503 (10th Cir.1992)). To meet the second prong of the test, a plaintiff must show "that the defendant's conduct was required by law, i.e., not a wholly gratuitous response to an action that in itself was frivolous or groundless." *Id.* (quoting *Williams v. Leatherbury,* 672 F.2d 549, 551 (5th Cir. 1982)).

■ In their amended complaint, the plaintiffs stated claims for relief in the following areas: overcrowding, education, use of isolation, use of force and restraint, medical and health care services, exercise and recreation, adequacy of staff, safety and sanitation, meals, mail, telephone privileges, detention of children in need of care, and separation of children in need of care from juvenile offenders. That the plaintiffs in this case obtained significant relief is evidenced by the comprehensive settlement agreement and consent decree which the plaintiffs, defendants, and third-party defendants executed on July 28, 1995. The decree imposes detailed responsibilities on the defendants and third-party defendants in regard to virtually all of the areas addressed in the plaintiffs' complaint.

To satisfy the first requirement of the catalyst test, however, the plaintiffs' lawsuit must be "a substantial factor or significant catalyst" leading to the relief obtained. The defendants argue that the plaintiffs' suit was not a significant catalyst in prompting the defendants to act. The defendants assert that the plaintiffs' primary objective was the construction of a new juvenile detention center to relieve overcrowding. The defendants had already decided to put the construction of a new facility to a vote in Shawnee County at the time the plaintiffs filed suit. Thus, according to the defendants, the plaintiffs' suit was not a substantial factor in achieving the relief obtained.

The court notes that the plaintiffs' complaint does not seek relief in the form of a new facility. Furthermore, the plaintiffs have obtained relief under the consent decree which is not provided by the building of a new youth center. While the new facility can be expected to alleviate certain concerns about overcrowding, the facility will not be available until 1997. Because the consent decree took effect in August 1995, the plaintiffs have therefore obtained relief regarding the overcrowding problem approximately two years sooner than they would have had they not filed suit. Moreover, the consent decree addresses numerous issues raised by the plaintiffs in their complaint, which are unrelated to the issue of overcrowding.

The defendants also argue that procedures set forth in the settlement agreements were consistent with the defendants' existing practices, and that the agreements therefore resulted in no significant changes at SCYC. Even if the agreements do reflect, to some extent, the defendants' existing practices, the consent decree provides the plaintiffs with mechanisms for enforcement and monitoring, at the defendants' expense, that would not be available to the plaintiffs in the absence of the decree. Furthermore, the defendants concede that the November 21, 1994, Joint Stipulation of Partial Settlement provided for changes in practices between SCYC and SRS.

Finally, the defendants contend that their actions, not the plaintiffs', were the catalyst for change on the issues of overcrowding and education. The defendants assert that these issues were resolved as a result of their third-party claims against SRS and the Board of Education–Unified School District 501 ("501"). Because the plaintiffs did not sue SRS and 501, the argument continues, the plaintiffs' suit was not a significant factor leading to the relief obtained. This argu-

ment fails, however, because there is no indication that the defendants would have filed a complaint against SRS or 501, had the plaintiffs not filed their suit.

For the foregoing reasons, we find that the plaintiffs' suit, which resulted in three settlement agreements, was a substantial factor in obtaining the relief set forth in those agreements. We now proceed to determine whether the defendants' conduct was required by law, i.e., not a wholly gratuitous response to an action that in itself was frivolous or groundless.

The plaintiffs argue that their federal claims, which are based primarily upon the Fourteenth Amendment to the United States Constitution, are not frivolous or groundless. The plaintiffs maintain that the Due Process Clause of the Fourteenth Amendment bestows upon them a right to adequate food, clothing, shelter, medical care, reasonable safety, and freedom from unnecessary bodily restraint. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989). The plaintiffs also cite *Schall v. Martin*, 467 U.S. 253, 269, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984), for the proposition that residents of SCYC who have not been adjudicated guilty of any crime have a due process right to be free from punishment, and that institutional practices or conditions which amount to punishment are violative of the Due Process Clause. The plaintiffs allege that certain policies and practices at SCYC violated the substantive due process requirements of the Constitution and/or constituted punishment prohibited by the Fourteenth Amendment.

The defendants assert that the plaintiffs never demonstrated the viability of their claims. The court also notes that the parties' July 28, 1995, consent decree provides that the decree is "not an admission of any constitutional violation."

■ The court need not, however, "conduct[ ] the very trial the consent decree was signed to avoid" in order to find that a plaintiff has prevailing party status under the catalyst test. *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir.1978). Nor is the fact that there has been no admission or finding of constitutional violation determinative. *See*

*Collins v. Romer*, 962 F.2d 1508, 1514 (10th Cir.1992). Rather, " '[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.' " *Farrar v. Hobby*, 506 U.S. 103, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989)).

*Woods v. Shawnee Gardens, L.P.*, 1993 WL 545220 (D.Kan. Dec. 1, 1993), applied the catalyst test to the plaintiff's pursuit of attorney's fees under 42 U.S.C. § 2000e–5(k). *Id.* at *1. Like the plaintiffs in the instant case, the plaintiff in *Woods* obtained relief in the form of a consent decree. *Id.* The consent decree in *Woods* contained a similar disclaimer to that contained in the consent decree at issue here, i.e., that the decree would "not constitute an adjudication or finding on the merits of the case and shall in no manner be construed as an admission by defendants of any violation of Title VII or any executive order, law, rule or regulation in connection with discrimination in employment." *Id.* The court inquired whether, in the absence of the consent decree, the plaintiff's pursuit of his constitutional claims could be considered "frivolous, unreasonable, or groundless." *Id.* at *4 (citing *Nadeau*, 581 F.2d at 281). The court answered the question in the negative and awarded the plaintiff attorney's fees. *Id.* at *6. *See also Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (§ 1983 plaintiff who obtained relief through consent decree entitled to attorney's fees).

Following *Woods*, we find that in the absence of the consent decree, the plaintiffs' claims in this matter were neither frivolous nor groundless. This conclusion is consistent with the court's action at the hearing on the plaintiffs' motion for preliminary injunction in October 1994. The plaintiffs alleged that conditions at SCYC, and the defendants' practices and policies pertaining thereto, violated the United States Constitution, the Juvenile Justice and Delinquency Act, 42 U.S.C. § 5601 *et seq.*, the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, and various laws and regulations of the state of Kansas. At close of the plain-

tiffs' evidence, the defendants moved for judgment as a matter of law. The court, however, refused to grant the defendants' motion, and encouraged the parties to continue settlement negotiations.

### B. Allocation of Fees Among Defendants and Third–Party Defendants

Having determined that the plaintiffs have satisfied both prongs of the catalyst test, and are therefore prevailing parties under 42 U.S.C. § 1988(b) for purposes of obtaining attorney's fees, we now proceed to address the defendants' argument that SRS and 501 should pay a portion of the plaintiffs' fees. The defendants assert that SRS and 501 are responsible for the plaintiffs' fees on matters pertaining to the third-party defendants.

■ A plaintiff cannot recover fees, however, from "an entity against which plaintiff did not even attempt to prevail." *Beard,* 31 F.3d at 951. Here, the plaintiff has not asserted a claim against either SRS or 501. Consequently, the plaintiff is not a prevailing party under § 1988(b) as to SRS and 501, and therefore cannot recover fees from the third-party defendants. *See Becker v. Blum,* 487 F.Supp. 873, 874 (S.D.N.Y.1980) (trial court has no power to assess attorney's fee award against non-party).

■ However, where a plaintiff obtains significant relief from a non-party or a third-party defendant, courts have reduced the plaintiff's fee award against the defendant. *See, e.g., Durett v. Cohen,* 790 F.2d 360, 363 (3d Cir.1986); *Williamsburg Fair Hous. Comm. v. Ross–Rodney Hous. Corp.,* 599 F.Supp. 509, 513–14 (S.D.N.Y.1984). The plaintiffs in this case have obtained relief from SRS and 501, as well as the defendants, as evidenced by the provisions of the settlement agreements. It is therefore necessary for the court to determine that portion of the plaintiffs' attorney's fees for which the defendants are responsible.

Many of the services provided by the plaintiffs' attorneys, however, are not readily divisible among the defendants and third-party defendants. For example, time spent drafting the various agreements cannot easily be allocated among the parties. On the other hand, a review of the substantive provisions of the agreements provides the

court with a means for assessing the defendants' proportionate responsibility. Sections I through XXII of the July 28, 1995, settlement agreement and consent decree, which incorporate the provisions of the two previous settlement agreements, impose requirements on the defendants as to conditions at SCYC. Sections I and XIX also impose requirements on SRS and 501: Section I addresses overcrowding, the single greatest issue in this litigation, while Section XIX addresses education at SCYC. It is evident, therefore, that SRS and 501 are partially responsible for the relief obtained by the plaintiffs in regard to the important issues of overcrowding and education. Because a portion of the plaintiffs' attorney's fees must be attributed to the third-party defendants, the court finds that a twenty percent reduction in the plaintiffs' fee award is equitable.

### C. Amount of Award

■ The starting point for determining a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. In setting the hourly rate, a court should consider "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983). Local fee rates should normally be applied, even where the attorneys seeking fees are from another area. *Id.* at 555.

The plaintiffs' attorneys in this case seek an hourly rate of $150. Larry Rute, Claudia York, and Lowell Paul assert that they have twenty-two, seventeen, and twenty years of experience, respectively, in the practice of law. They have provided the court with affidavits from two local attorneys, who state that a rate of $150 per hour is reasonable in the Topeka area for attorneys with skill and experience comparable to that of the plaintiffs' counsel.

Defense counsel responds that the plaintiffs' requested rate is unreasonably high. Ann Hoover submits that while she and her partner, Mark Bennett, have eighteen and thirty years of experience, respectively, they

have billed their time in this litigation at only $90 per hour.

▮ In light of the parties' affidavits, recent fees awards, and the court's own familiarity with prevailing rates in the area, the court finds that $125 represents a reasonable hourly rate for Topeka civil rights attorneys with skill and experience comparable to that of the plaintiffs' counsel. *See Brown v. Unified Sch. Dist. No. 501, Shawnee County, Kan.,* 878 F.Supp. 1430, 1436 (D.Kan.1995) (civil rights attorneys awarded rates of $90 to $125); *Phelps v. Hamilton,* 845 F.Supp. 1465, 1470 (D.Kan.1994) (requested rate of $130 reduced to $125 for experienced civil rights litigator); *Tyler v. City of Manhattan,* 866 F.Supp. 500, 502 (D.Kan.1994) (civil rights attorneys awarded rates of $90 to $125). We now turn to the defendants' other arguments as to the reasonableness of the plaintiffs' attorney's fees.

The defendants contend that the special circumstances of this case render an award of attorney's fees unjust. According to the defendants, the plaintiffs' concerns could have been resolved without litigation, in light of the August 2, 1994, passage of the bond issue for a new juvenile detention facility. The defendants also argue that because their own actions, i.e., deciding to put the bond issue to a vote, and filing a third-party complaint against SRS and 501, brought about the changes sought by the plaintiffs, the plaintiffs' success in this matter was minimal. The defendants cite *Farrar v. Hobby* for the proposition that " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " 506 U.S. at 114, 113 S.Ct. at 574 (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941).

▮ The "special circumstances" exception to an award of attorney's fees pursuant to 42 U.S.C. § 1988(b) should be narrowly construed. *Hatfield v. Hayes,* 877 F.2d 717, 720 (8th Cir.1989). Moreover, for the reasons given in our discussion of the plaintiffs' prevailing party status, the court finds that the plaintiffs obtained significant relief independent of the planned new facility. We also concluded that there is no evidence that the defendants would have brought an action against the third-party defendants had the plaintiffs not filed their suit. The defendants

have not demonstrated that special circumstances or the plaintiffs' degree of success warrants a denial or reduction in the fees award.

▮ The defendants next claim that the time entries on the plaintiffs' billing statements are not sufficiently specific to allow the defendants to adequately lodge their objections. The defendants cite an entry in which one of the plaintiffs' attorneys recorded "12.00 hours—work on draft of proposed consent decree" as too vague and summary in nature. Counsel is not required, however, "to record in great detail how each minute of his time was expended." *Hensley,* 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12. It is sufficient that counsel "identify the general subject matter of his time expenditures." *Id.* An attorney seeking to recover fees should provide records which reveal how his time was "allotted to specific tasks—for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on." *Ramos,* 713 F.2d at 553. The court finds that the plaintiffs' billing statements are sufficiently specific to meet the standards set in *Hensley* and *Ramos.*

▮ The defendants also contend that the number of hours for which the plaintiffs seek to recover fees is unreasonably high. The defendants assert that counsel for the defendants have billed significantly less time in this case than that claimed by the plaintiffs. The plaintiffs seek to recover fees for 1,389.2 hours, which, as explained above, the court shall reduce by twenty percent. The defendants' counsel have submitted affidavits in which they state that they have spent approximately 356.3 hours working on matters related to the plaintiffs' claims in this litigation.

As the plaintiffs point out, however, the number of hours billed by the defendants' counsel does not include the time that attorneys in the Shawnee County Counselor's office spent on this case. Furthermore, out of a total of 1,389.2 hours billed, the defendants cite only three time entries, representing a total of 26.5 hours, which they claim represent excessive time expenditures. The court finds that in light of the complexity of this

litigation, which culminated in three settlement agreements, the number of hours billed by the plaintiffs' attorneys is reasonable.

 Next, the defendants assert that the plaintiffs are not entitled to recover fees for time spent performing clerical tasks and background research, traveling, and granting press interviews. The defendants fail again, however, to specify which time entries they believe represent such tasks. Nevertheless, the court shall reduce the plaintiffs' award for travel expenses incurred by non-local counsel. *See Ramos,* 713 F.2d at 559; *Brown,* 878 F.Supp. at 1437–38 (because there is normally no need to employ counsel from outside the area, travel expenses between the offices of non-local counsel and the city in which the litigation is conducted are not reimbursable). We shall reduce the plaintiffs' fees request by thirty-two hours for Claudia York's travel time between Kansas City and Topeka. We shall also reduce the plaintiffs' award of costs by $58.78 for Ms. York's hotel expenses. Other costs sought by the plaintiffs, such as telephone, postal, and copying expenses, are properly allowable if such costs are usually charged separately. *Ramos,* 713 F.2d at 559. Because billing such expenses separately is common practice, we shall not reduce the plaintiffs' award for these items. *Mares v. Credit Bureau,* 801 F.2d 1197, 1208 (10th Cir.1986).

## III. *CONCLUSION*

In summary, the defendants shall pay the plaintiffs' fees and costs based on the following calculations:

| | | |
|---|---|---|
| Claudia York | 293.2 hours @ $125 per hour = | $ 36,650.00 |
| Larry Rute | 717.75 hours @ $125 per hour = | 89,718.75 |
| Lowell Paul | 346.25 hours @ $125 per hour = | 43,281.25 |
| | | $169,650.00 |
| | reduced by twenty percent | (33,930.00) |
| | | $135,720.00 |
| | plus costs | 2,536.48 |
| | Total | $138,256.48 |

**IT IS BY THE COURT THEREFORE ORDERED** that the plaintiffs' motion for attorney's fees and costs (Doc. 120) is granted as modified in the amount of $138,256.48.